# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2285

_____

United States of America,     *
    *
      Appellee,     *
    *
       v.     *
    *
Marco M. Pruneda,     *
    *
      Appellant.     *

_____

No. 07-2369

_____

Appeals from the United States
District Court for the
District of Nebraska.

United States of America,     *
    *
      Appellee,     *
    *
       v.     *
    *
Armando Garcia-Delacruz,     *
    *
      Appellant.     *

_____

Submitted:  December 10, 2007
Filed: February 8, 2008

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Marco Pruneda and Armando Garcia-Delacruz were convicted by a jury on Count I of conspiracy to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. § 2, 21 U.S.C. §§ 841(b)(1) and 846. Pruneda and Garcia-Delacruz were also convicted on Count II of possession and use of a short-barreled shotgun in relation to drug trafficking, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 924(c). Garcia-Delacruz appeals the district court's[1] denial of his motion to suppress evidence seized from his house, challenges the sufficiency of the evidence used to convict him, argues that the district court improperly admitted certain exhibits that were unfairly prejudicial, and asserts that his sentence is not reasonable. Pruneda appeals, arguing that there was insufficient evidence to convict him, that the district court improperly admitted certain exhibits that were unfairly prejudicial, and that the district court erred by not finding that he was a minor participant in the conspiracy. We affirm.

I. Background

On January 25, 2006, the Tri-City Federal Drug Task Force had valid arrest warrants for Garcia-Delacruz and Pruneda and was in the process of securing a search warrant for Garcia-Delacruz's house. Because Pruneda was often present at Garcia-Delacruz's house, law enforcement planned to execute the arrest warrants and search warrant at the same time to reduce the risk that evidence within the house would be relocated or destroyed after the suspects were arrested. Before the search warrant was obtained, however, the surveillance team monitoring Garcia-Delacruz's house reported that an individual was running from the house and that others were arriving at the scene. At that point, law enforcement decided to execute the arrest warrant for Garcia-Delacruz.

---

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

The surveillance team reported that Garcia-Delacruz was working on his car behind his house. As Garcia-Delacruz and another individual were seen entering the basement of the house, law enforcement moved in to make the arrest. Three officers approached the back door of the house and could see the two individuals in the basement. The officers announced their presence and ordered the two individuals to show their hands. After the two individuals failed to comply, the officers entered the basement and handcuffed them.

One of the officers testified that his team, which executes high-risk arrests, is trained to do a protective sweep each time they do an entry. Accordingly, the officer conducted a protective sweep of Garcia-Delacruz's basement to ensure that no other individuals were present. While conducting the protective sweep of the basement, the officer observed firearms and drug paraphernalia in plain view. After the protective sweep, the two suspects were removed from the basement. The officer who conducted the protective sweep informed another officer, who was working on the search warrant, of what he had observed in the basement. The two officers returned to the basement to observe the firearms and drug paraphernalia. The fact of the officers' observation of the contraband was then added to the information received from cooperating witnesses and included in the affidavit in support of a search warrant. Thereafter, law enforcement officers on the scene received a phone call confirming that a search warrant had been issued. The officers conducted a full search of Garcia-Delacruz's house and seized several items, including firearms and drug paraphernalia.

The district court denied Garcia-Delacruz's motion to suppress the evidence seized from his house. After a several-day trial, the jury found Garcia-Delacruz and Pruneda guilty as set forth above. Garcia-Delacruz's Presentence Investigation Report (PSR) recommended a total offense level of 36 and a criminal history category I under the guidelines, with a resulting sentencing range of between 188 and 235 months' imprisonment on Count I. Garcia-Delacruz objected to the drug quantity listed in his PSR and to his base offense level. The district court found that Garcia-Delacruz was responsible for 2.83 kilograms of drugs and then granted in part Garcia-Delacruz's

objection to his base offense level, which reduced the base offense level to 34 and reduced the guidelines range to 151 to 188 months' imprisonment.

Pruneda's PSR recommended a total offense level of 32 and a criminal history category IV, resulting in a sentencing range of between 168 and 210 months' imprisonment on Count I. Pruneda raised no objection to the drug quantity of 1.16 kilograms that was listed in his PSR, but he did object to his criminal history category. The district court sustained his objection and determined that Pruneda had a criminal history category III, which resulted in a reduced range of 151 to 188 months' imprisonment.

The district court found that Garcia-Delacruz's larger drug quantity and Pruneda's significant criminal history balanced each other out. The district court sentenced both defendants to 160 months' imprisonment on Count I, 120 months' imprisonment on Count II, to run consecutively, 5 years of supervised release for each count, to run concurrently, and a $200 special assessment.

II. Garcia-Delacruz's Motion to Suppress

Garcia-Delacruz filed a motion to suppress all evidence obtained during the search of his house. After a hearing, the district court adopted the magistrate judge's[2] report and recommendation and denied the motion. On appeal, Garcia-Delacruz argues that the officers entered his house without a search warrant and that the protective sweep of the basement and the reentry into the basement after his arrest constituted unreasonable searches. Garcia-Delacruz further contends that because the search warrant would not have been issued without the information obtained during the allegedly unreasonable protective sweep of the basement, the evidence seized

---

[2]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

-4-

pursuant to the search warrant should be suppressed as the fruit of an illegal search. We disagree.

In reviewing the denial of a motion to suppress, we review the district court's conclusions of law *de novo* and its factual findings for clear error. United States v. Ramos-Caraballo, 375 F.3d 797, 800 (8th Cir. 2004). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (internal quotation omitted).

A valid arrest warrant contains authority to enter the residence of the person named in the warrant if (1) the officers reasonably believe the person resides there, and (2) the officers reasonably believe the person is present when the warrant is executed. Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Clayton, 210 F.3d 841, 843 (8th Cir. 2000). When the officers entered Garcia-Delacruz's house, they had a valid arrest warrant for him, they had reports that he resided at that address, and the officers on the scene identified him at the residence before the arrest warrant was executed. Accordingly, the officers were legally authorized to enter the basement.

Upon legally entering a residence, officers have the authority to conduct a protective sweep of the residence if the officers reasonably believe, based on specific and articulable facts, that the residence harbors an individual who could be dangerous. Maryland v. Buie, 494 U.S. 325, 334 (1990); United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002). A protective sweep is limited to a cursory inspection of spaces where a person may be found and may not last longer than is necessary to dispel the reasonable suspicion of danger. Buie, 494 U.S. at 335. Once inside Garcia-Delacruz's basement, officers were authorized to conduct a protective sweep because there were specific and articulable facts that suggested there was a reasonable suspicion of danger. The officers were in a confined space; the basement was not well

lit; the area contained a partial wall dividing the space into at least two areas; there were reports that other individuals were in the residence; and there were reports that Garcia-Delacruz stored weapons in the basement. Furthermore, the protective sweep was only a cursory inspection and lasted no longer than necessary. While conducting the protective sweep, the officer did not move any objects. Moreover, the evidence observed during the protective sweep was in plain view and was immediately recognizable as firearms and drug paraphernalia. See United States v. Khabeer, 410 F.3d 477, 482 (8th Cir. 2005) (officer may seize items that are in plain view if the officer is legally present at the location and the items are immediately recognizable as incriminatory). Thus, the officer's observation of the contraband was not unreasonable.

Even if the protective sweep was unreasonable, or if it was unreasonable for the officer who conducted the protective sweep to leave the basement and then return with another officer to point out the items in plain view, the inevitable discovery exception to the exclusionary rule validated the admission of the evidence, as the district court correctly observed. See Nix v. Williams, 467 U.S. 431, 440-50 (1984); United States v. Halls, 40 F.3d 275, 276 (8th Cir. 1994). To prevail under this exception, the government must establish "(1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997). Even before Garcia-Delacruz's arrest warrant was executed, law enforcement was in the process of obtaining a search warrant for his house. Moreover, the affidavit contained the additional information from cooperating witnesses that indicated that an ongoing drug conspiracy was being conducted in the residence.

The information from the cooperating witnesses was sufficient to establish probable cause and justify a search warrant for Garcia-Delacruz's house. "[A] warrant is proper so long as the evidence as a whole creates a reasonable probability that the

search will lead to the discovery of evidence." United States v. Smith, 266 F.3d 902, 904 (8th Cir. 2001) (internal quotation omitted). There is no bright-line test for determining when information in a warrant is stale. United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). Instead, we must look to the particular circumstances of the case, including the nature of the crime involved. Id. The information included in the search warrant from the cooperating witnesses was not stale because it was collected over a period of several months, it suggested an ongoing drug conspiracy, it involved controlled buys, and the most recent installment of the information occurred within approximately one month of the arrest date. See id. at 1142 (outlining cases in which a warrant was not stale even though a period of time had passed between the receipt of the information used in the affidavit and the arrest); Smith, 266 F.3d at 904-05 (warrant not stale even though three months elapsed between a series of three controlled buys and the arrest). Accordingly, even without the information discovered during the protective sweep, there is a reasonable probability that law enforcement would have obtained a search warrant with the information collected from confidential informants, and thus the district court did not err in denying the motion to suppress.

III. Sufficiency of the Evidence

Pruneda and Garcia-Delacruz contend that the evidence was not sufficient to enable a reasonable jury to conclude that each element of the crimes charged was proved beyond a reasonable doubt. They rest their argument on the assertion that the witnesses who testified against them were not credible because they benefitted from cooperating with the government, they made inconsistent statements, and some of them violated their cooperation agreements by continuing to use drugs or by being arrested. We disagree.

We review *de novo* whether the evidence presented at trial was sufficient to support the verdict, viewing the evidence in the light most favorable to the verdict and giving it the benefit of all reasonable inferences. United States v. Spears, 454 F.3d

830, 832 (8th Cir. 2006). We do not weigh the evidence or assess witness credibility, and we reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. In this case, the evidence included testimony that Pruneda and Garcia-Delacruz worked together, that they sold methamphetamine on numerous occasions, and that they possessed firearms during at least some of these drug transactions. The jury found this testimony to be credible, a determination that is not ours to dispute. See United States v. Ziesman, 409 F.3d 941, 948 (8th Cir. 2005) (witness credibility is "virtually unreviewable on appeal" (internal quotation omitted)). Accordingly, we conclude that the evidence was sufficient to convict both defendants on Count I and Count II.

IV. Admission of Evidence

Pruneda and Garcia-Delacruz argue that three of the exhibits presented by the government were improperly admitted because they contained pornographic images that were unfairly prejudicial. We disagree.

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence is not unfairly prejudicial simply because it harms the defendant's case; it becomes unfair only if it "tends to suggest decision on an improper basis." United States v. Myers, 503 F.3d 676, 682 (8th Cir. 2007) (internal quotation omitted). District courts have broad discretion to admit or exclude evidence under this rule. Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007). We reverse a district court's determination if the district court abused its discretion and "the evidentiary ruling was prejudicial to the point of producing a different verdict." Id. at 1140 (internal quotation omitted).

We conclude that the district court did not abuse its discretion in admitting exhibits 14C, 14D, and 14E. The admission of irrelevant, highly prejudicial

pornographic material has resulted in the reversal of a conviction. See United States v. Harvey, 991 F.2d 981, 995-96 (2d Cir. 1993) (evidence of defendant's possession of adult pornographic videotapes that contained highly inflammatory material such as bestiality and "gross acts involving human waste" were irrelevant and highly prejudicial and therefore improperly admitted when defendant was charged with knowing receipt of child pornography). Exhibits 14C, 14D, and 14E were relevant, however, because they were photographs of Garcia-Delacruz's basement as it was found when the officers searched the house, and the photographs contained images of the firearms and drug paraphernalia seized by law enforcement. The fact that the photographs also contained an image of a *Hustler* magazine and CD, does not make the photographs irrelevant. Furthermore, the photographs were unlikely to be highly prejudicial to the defendants because the photographs themselves were not pornographic, possession of the items was not illegal, and, in contrast to what occurred in Harvey, the government did not elicit testimony or draw attention to the *Hustler* items within the photographs.

Additionally, the admission of the photographs was not so prejudicial as to produce a different verdict. The government presented enough evidence, such as the testimony of the officer who observed the contraband in plain view, that even without the photographs, the jury could have convicted the defendants. This testimony does not make the photographs unduly cumulative, however, because the probative value of the photographs outweighs any alleged prejudice. Thus, the district court did not abuse its discretion by admitting the photographs, and the exhibits were not so prejudicial as to produce a different verdict.

V. Pruneda's Role in the Conspiracy

Pruneda argues that the district court erred by not granting him a two-level reduction in his offense level because of his allegedly minor role in the criminal activity. We disagree.

A defendant who is found to have been only a minor participant in the criminal activity is entitled to a two-level decrease in his offense level. United States Sentencing Guidelines § 3B1.2(b). "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Belitz, 141 F.3d 815, 818 (8th Cir. 1998). The fact that a defendant is less culpable than another participant in the criminal activity is not, in and of itself, enough to warrant a downward adjustment when the defendant was in fact deeply involved in the criminal activity. United States v. Cubillos, 474 F.3d 1114, 1120 (8th Cir. 2007). It is the defendant's burden to establish that a reduction is warranted. United States v. Salvador, 426 F.3d 989, 993 (8th Cir. 2005). We review for clear error a district court's factual findings regarding the defendant's role in the criminal activity. Cubillos, 474 F.3d at 1120.

Pruneda argues that he was less involved in the drug distribution conspiracy than Garcia-Delacruz. This is not enough, however, for us to conclude that the district court clearly erred by not applying the downward adjustment. Furthermore, Pruneda did not object to the government's assertion in his PSR that he was responsible for 1.16 kilograms of methamphetamine. Measuring this drug amount against the elements of the crime charged, conspiracy to distribute more than 500 grams of methamphetamine, it is clear that Pruneda was deeply involved in the criminal activity. See United States v. Whirlwind Soldier, 499 F.3d 862, 873 (8th Cir. 2007) (no minor role reduction warranted when defendant actively sold drugs and coordinated the distribution of drugs by others in the criminal activity); United States v. Carpenter, 487 F.3d 623, 626 (8th Cir. 2007) (no minor role reduction warranted when defendant regularly received methamphetamine and distributed three pounds of methamphetamine during the conspiracy). Because transportation of the drugs is "a necessary part of illegal drug distribution," Pruneda's self-acknowledged role as a "mule" or courier in the drug conspiracy does not entitle him to a minor participant role reduction. United States v. Martinez, 168 F.3d 1043, 1048 (8th Cir. 1999).

Accordingly, the district court did not clearly err when it declined to apply a two-level reduction to Pruneda's offense level.

VI. Garcia-Delacruz's Sentence

Garcia-Delacruz argues that the district court erred by holding him responsible for a larger drug quantity than Pruneda. We disagree.

We review *de novo* a district court's application of the sentencing guidelines, and we review factual findings, such as drug quantity, for clear error. United States v. Alexander, 408 F.3d 1003, 1009 (8th Cir. 2005). To calculate drug quantity, the district court must "find by a preponderance of the evidence that the transaction or activity was: 1) in furtherance of the conspiracy; and 2) either known to that defendant or reasonably foreseeable to him." Id. at 1009-10 (internal quotations omitted). Following Garcia-Delacruz's objection to the drug quantity set forth in his PSR, the district court reviewed the evidence presented at trial and found that Garcia-Delacruz was responsible for 2.83 kilograms of methamphetamine. That Pruneda was held responsible for a smaller drug quantity does not establish that the district court committed clear error with respect to Garcia-Delacruz. Because Pruneda did not object to the drug quantity set forth in his PSR, the district court was entitled to accept that information as true. See Carpenter, 487 F.3d at 626. Furthermore, information from cooperating witnesses indicated that there were multiple transactions that Garcia-Delacruz was involved in and Pruneda was not. The fact that the district court described Pruneda as a "full-fledged major participant" in the conspiracy does not mean that Garcia-Delacruz and Pruneda necessarily were responsible for the same drug quantity. Accordingly, the district court did not clearly err in holding Garcia-Delacruz responsible for a larger drug quantity than Pruneda.

Garcia-Delacruz also argues that the district court should have departed from the base offense level calculation in an effort to reduce the disparity between Garcia-Delacruz and Pruneda. We disagree.

-11-

We review a district court's imposition of a sentence under an abuse-of-discretion standard. <u>Gall v. United States</u>, 128 S. Ct. 586, 597 (2007). A sentence within the applicable guidelines range is presumptively reasonable on appeal. <u>Rita v. United States</u>, 127 S. Ct. 2456, 2462 (2007); <u>United States v. Denton</u>, 434 F.3d 1104, 1113 (8th Cir. 2006). Garcia-Delacruz contends that the disparity in treatment between himself and Pruneda indicates that the district court abused its discretion. The district court, however, held each defendant responsible for a different drug quantity, which is a permissible basis for the application of different base offense levels. Furthermore, a sentencing disparity among co-defendants does not, in and of itself, require a departure. <u>United States v. Watson</u>, 480 F.3d 1175, 1177 n.3 (8th Cir. 2007). Accordingly, the district court did not abuse its discretion in sentencing Garcia-Delacruz as it did.

The judgment is affirmed.

_____