# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3434

_____

United States of America,         *
         *
       Appellee,         *
         *   Appeal from the United States
   v.         *   District Court for the
         *   Western District of Missouri.
Brent O. Trower,         *
         *   [UNPUBLISHED]
       Appellant.         *

_____

Submitted: April 18, 2008
Filed: July 18, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

PER CURIAM

Brent Trower conditionally pleaded guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Having reserved his right to do so, Trower appeals from the district court's[1] denial of his motion to suppress the firearm as the fruit of an unlawful search. We affirm.

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, who adopted the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

## I. Background

Late on the afternoon of September 14, 2006, Trower reported that his fiancee, April Aguilar, was missing. Aguilar was in this country on a 90-day marriage visa from the Philippines. Trower called the Trenton, Missouri, Police Department and made several calls to the Grundy County Sheriff's Department in an effort to obtain their assistance in locating Aguilar. Aguilar had left a note for Trower and had apparently taken all her belongings that she had brought with her from the Philippines, but had left the things she had acquired here. Trower believed that a local couple named Vernon and Nandit Jones either was harboring her or had helped her leave.

Upon being contacted by the county sheriff's office, Vernon Jones asked a deputy sheriff to come to his home. Deputy Clint Griswold responded and was told by Vernon that Aguilar was not happy with her relationship with Trower and that she was frightened of him because he kept a pistol and a large amount of marijuana in his house. Earlier that day while Trower was at work, Aguilar had invited the Joneses over and had showed them the large amount of marijuana that Trower kept in the freezer and the marijuana that he kept on a plate underneath a recliner in the living room. Griswold called Officer Seth Rorebeck of the Trenton Police Department, who was at Trower's house at the time, telling him that Aguilar was not at the Joneses' home. He also told Rorebeck about the drugs and gun and then drove to Trower's home, accompanied by another deputy sheriff.

Upon Griswold's arrival, Trower told the officers that Aguilar had left a note, but that he had misplaced it in his distress. Trower consented to the officers' request for permission to search for the note and led them through the house to where Aguilar's remaining items were located. Rorebeck, whom Trower had earlier led throughout the house, stopped briefly in the living room, bent down a few feet from the recliner, and shined his flashlight underneath, revealing a plate containing marijuana and rolling papers as described by Vernon Jones. In response to Griswold's

inquiry whether they could freely search the house for evidence of a crime or of Aguilar's current location, Trower said that he had showed the officers everything there was to see. Rorebeck informed Griswold that he had seen the marijuana, whereupon they arrested Trower. A search warrant was obtained for the home, leading to the seizure of the firearm that formed the basis of the present charge.

## II. Discussion

When reviewing the outcome of a motion to suppress, we review *de novo* a district court's conclusions of law and review for clear error its findings of fact. United States v. Pruneda, 518 F.3d 597, 603 (8th Cir. 2008). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (internal quotation omitted).

Officer Rorebeck's view of the marijuana under the recliner gave the officers probable cause to arrest Trower for possession of a controlled substance and to obtain a warrant to search his home. Trower contends, however, that because his consent to the officers' entry to the home was obtained by deception, Rorebeck was not in a position in which he could lawfully view the marijuana beneath the recliner. Alternatively, Trower contends that Rorebeck expanded the scope of the search beyond that to which Trower had consented, rendering the search illegal.

Whatever deception the officers may have used to gain entry into the home was not so extensive that it can be considered to have amounted to coercion. Consent obtained through deceit or trickery can constitute evidence of coercion that may in a given case vitiate the consent. United States v. Reinholz, 245 F.3d 765, 780 (8th Cir. 2001). Standing alone, however, deception generally will not invalidate consent. United States v. Carter, 884 F.2d 368, 374-75 (8th Cir. 1989); see United States v.

Yang, 345 F.3d 650, 654-55 (8th Cir. 2003). But cf. Bumper v. North Carolina, 391 U.S. 543, 546-49 (1968) (holding that consent given after an officer falsely claims to have a warrant is not voluntary because it is given only in acquiescence to authority). The deception, if indeed it was that, consisted of the officers' failure to tell Trower what Vernon Jones had told them about the marijuana and the gun. Accordingly, Trower's consent was not given in acquiescence to any claim of authority. Trower actively solicited law enforcement's assistance in finding Aguilar, and he had already showed Rorebeck around his home before Griswold and the other deputy arrived. The officers testified that part of their purpose in entering the house was to locate the note and help resolve the situation. Thus, there are no other circumstances that warrant a finding that Trower was coerced into inviting the officers into his home.

Rorebeck's view of the object beneath the recliner did not constitute a search, for police officers do not conduct a search in the Fourth Amendment sense merely by using their eyes. United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008) ("Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant.") (citing Horton v. California, 496 U.S. 128, 133 (1990)). We attach no importance to the fact that Rorebeck used a flashlight. See United States v. Dunn, 480 U.S. 294, 305 (1987); United States v. Garner, 907 F.2d 60, 62 n.2 (8th Cir. 1990). Rorebeck employed no nonpublic, sense-enhancing technology, see Kyllo v. United States, 533 U.S. 27, 40 (2001), nor did he manipulate the physical environment within the home with the intent to uncover information. See Arizona v. Hicks, 480 U.S. 321, 324-25 (1987).

Even if we assume that Rorebeck's act of bending over to look beneath the recliner constituted a search within the meaning of the Fourth Amendment, we reject Trower's contention that the officers expanded the scope of the search beyond that which he had granted. See United States v. Ferrer-Montoya, 483 F.3d 565, 568 (8th Cir. 2007) (per curiam) (holding that the scope of a search is measured by what a reasonable person would understand it to be). Trower invited the officers into his

home for the express purpose of searching for a misplaced note from his fiancee. It was not unreasonable for Rorebeck to look for a lost piece of paper underneath furniture that is raised a few inches off the floor.

      The judgment is affirmed.

_____