United States Court of Appeals

For the Eighth Circuit

_____

No. 21-3916

_____

United States of America,

*Plaintiff - Appellee*,

v.

Bryan Kirkendoll,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 18, 2022
Filed: March 14, 2023

_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Bryan Kirkendoll of offenses involving interstate transportation of stolen property and witness tampering. The district court[1] sentenced him to a total of 108 months' imprisonment, along with a term of supervised release

_____

[1] The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

and restitution. Kirkendoll appeals, arguing that there was insufficient evidence to support the convictions, and that the district court erred when imposing the sentence. We affirm.

I.

We recite the facts in the light most favorable to the verdict. Kirkendoll's co-conspirator, Viktor Chernetskiy, testified at trial that Kirkendoll contacted him on Facebook, and that the duo then started to burglarize cell phone stores in Missouri during November 2018. They later branched out to stores in other States and continued until they were arrested in June 2019.

In researching stores to target, the conspirators looked for off-brand stores and authorized dealers that would be easier to enter than flagship stores. Their objective was to "break in and get the most phones and get away with it."

Chernetskiy identified himself and Kirkendoll in security footage that depicted each of the burglaries relating to the charges for interstate transportation of stolen property. The security footage showed Chernetskiy and Kirkendoll entering the stores, locating and loading cell phones into trash bags, and depositing the stolen phones into Chernetskiy's car. After the burglaries, the men returned to Missouri and split up the phones at the home of Kirkendoll's girlfriend.

Police arrested Chernetskiy and Kirkendoll in Missouri on the morning of June 13, 2019, shortly after two burglaries in Enid and Pond Creek, Oklahoma. Law enforcement agents had tracked the pair's movements through the night by monitoring GPS data on Chernetskiy's phone. This information showed that the men traveled from Missouri to Enid and Pond Creek before returning to Missouri.

At the time of their arrests, Chernetskiy and Kirkendoll wore clothing that matched the suspects in the security footage from the stores in Oklahoma and from prior burglaries. The gray Dodge Charger in which they were arrested matched the car seen in security footage at the crime scenes. The vehicle contained more than 150 packaged cell phones in black garbage bags, along with burglary tools.

In June 2019, after the indictment was returned, the district court released Kirkendoll from custody pending trial. In September 2019, a woman identifying herself as Briona Willis, later confirmed to be Taressa Swygert, informed the FBI that Kirkendoll had been involved in selling stolen cell phones. In February 2020, Swygert forwarded to investigators a Snapchat message from Kirkendoll that she felt was threatening to her life. The Snapchat message read: "Just no U gone die rat bitch. U act like I don't know where U lay yo head at."

The FBI also discovered a post by Kirkendoll on his Facebook page from February 18, 2020, that read "Rats get Klapped, snitch. Put that in ya journal." Another contemporaneous post said: "You on borrowed time, so utilize it wisely. Food for thought." This statement was followed by a devil emoji. The posts were made shortly before Kirkendoll stated in a Facebook Live video on February 19, 2020, that he had identified an informant in his case to whom he referred as "that Kansas bitch." Chernetskiy testified that "Briona" lived in Kansas, and FBI agents interviewed Swygert in Kansas during September 2019. In light of this information, the court revoked Kirkendoll's pretrial release and ordered him detained pending trial.

The case proceeded to trial, and a jury convicted Kirkendoll on seven counts. The district court imposed the sentence, and this appeal followed.

II.

Kirkendoll first argues that the evidence was insufficient to support the convictions. We view the evidence in the light most favorable to the verdict, and will sustain the judgment if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Tillman*, 765 F.3d 831, 833 (8th Cir. 2014).

There were four convictions involving transportation of stolen property: one count of conspiracy to commit interstate transportation of stolen property, *see* 18 U.S.C. §§ 371 and 2314, and three counts of aiding and abetting the interstate transportation of stolen property, *see* 18 U.S.C. §§ 2314 and 2. The jury also convicted on three charges arising from Kirkendoll's messages and posts regarding witness Swygert: one count of witness tampering, *see* 18 U.S.C. § 1512(b)(1); one count of transmitting threats in interstate commerce, *see* 18 U.S.C. § 875(c); and one count of witness tampering by harassment, *see* 18 U.S.C. § 1512(d)(1).

On the stolen property offenses, Kirkendoll's entire argument on sufficiency is that the government's case rested on the testimony of a co-conspirator with a motive to lie. Credibility determinations, however, are within the province of the jury and virtually unreviewable on appeal. *United States v. McCraney*, 612 F.3d 1057, 1063 (8th Cir. 2010). The jury heard that Chernetskiy had pleaded guilty and was testifying as a cooperating witness with the hope of receiving a reduced sentence, but permissibly credited his account. Chernetskiy gave detailed testimony about the scheme that was neither incredible nor insubstantial on its face. His testimony was corroborated by other evidence, including security camera videos, GPS data, and seized evidence of burglaries. We therefore conclude that there was sufficient evidence to support Kirkendoll's convictions for conspiracy and for aiding and abetting the interstate transportation of stolen property.

On the charges involving witness tampering and threats, Kirkendoll's entire argument is that the prosecution relied on "the recanted statements of a jilted paramour." He refers to the fact that Swygert originally provided investigators with a Snapchat message from Kirkendoll and expressed fear for her life, but later appeared as a witness for the defense and presented a more sympathetic version of events. At trial, Swygert asserted that Kirkendoll had not threatened her, and that she had exaggerated matters to get Kirkendoll in trouble.

Aside from Swygert's vacillating testimony, however, the prosecution presented evidence that Swygert gave a statement to the FBI implicating Kirkendoll, and that Swygert thereafter received an objectively threatening Snapchat message from Kirkendoll's account. The prosecution showed that Kirkendoll had identified "that Kansas bitch" as an informant against him, and that Swygert lived in Kansas. Kirkendoll also made a separate threat against a "rat" and referred to living on "borrowed time" in Facebook posts a few weeks after the Snapchat message. An FBI agent testified that Swygert said she recanted her statement because she was afraid for her life.

The jury was entitled to weigh the conflicting testimony and to make necessary credibility determinations. A reasonable jury could have discounted Swygert's testimony at trial and found that Kirkendoll sent the threatening Snapchat message in an attempt to harass Swygert and thereby to dissuade her from testifying at his trial. The Facebook posts, independent of Swygert's testimony, supported a finding that Kirkendoll transmitted threats in interstate commerce and threatened Swygert with intent to prevent her testimony. There was thus sufficient evidence to support the convictions under 18 U.S.C. §§ 1512(b)(1), 1512(d)(1), and 875(c).

III.

Kirkendoll next challenges his sentence. He first argues that the district court committed procedural error in denying a downward adjustment for a minor or minimal role in the stolen property offenses. *See* USSG § 3B1.2. These adjustments apply to a defendant who shows that he is "substantially less culpable than the average participant in the criminal activity." *Id*. § 3B1.2, comment. (n.3(A)); *see United States v. Pruneda*, 518 F.3d 597, 606 (8th Cir. 2008). We review the district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Alverez*, 235 F.3d 1086, 1090 (8th Cir. 2000).

Kirkendoll contends that he was entitled to a mitigating role reduction because his co-conspirator Chernetskiy (i) became a cooperating witness, (ii) selected the stores to burglarize, (iii) drove the car to and from the burglaries, and (iv) committed at least one burglary with another person. The district court, however, considered the evidence and found that there was not a sufficient difference in the involvement of Chernetskiy and Kirkendoll to warrant a mitigating role reduction for Kirkendoll.

This finding was not clearly erroneous. Kirkendoll actively participated in all but one of the burglaries. He worked alongside Chernetskiy to break into the stores, carry out the cell phones, and transport them back to Missouri. The two conspirators divided the stolen phones between them. Even if Kirkendoll was less culpable than Chernetskiy, he was "deeply involved" in the crimes of conviction and is not entitled to a reduction for a mitigating role in the offense. *Alverez*, 235 F.3d at 1090 (quoting *United States v. Thompson*, 60 F.3d 514, 518 (8th Cir. 1995)). The district court did not clearly err in finding that Kirkendoll was an average participant, rather than one who played a minor or minimal role.

Kirkendoll also contends that his sentence is unreasonable under 18 U.S.C. § 3553(a). We review that question under a deferential abuse-of-discretion standard.

*Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). Where a sentence is outside the advisory guideline range, we consider the extent of the deviation and the reasons for it, giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

The district court adopted the advisory guideline range of 63 to 78 months' imprisonment from the presentence report. The court then imposed a sentence of 60 months on the stolen property counts and a sentence of 48 months on the witness tampering counts, and ordered them to run consecutively for a total of 108 months' imprisonment. The court cited the command of 18 U.S.C. § 3147 that a term of imprisonment for an offense committed while on pre-trial release shall be consecutive to any other term of imprisonment. The court did not formally apply the three-level increase under USSG § 3C1.3 for cases in which § 3147 applies, but achieved the same result by varying upward under § 3553(a) by the equivalent of three offense levels.

In determining Kirkendoll's sentence, the district court considered the § 3553(a) factors. The court acknowledged that Kirkendoll's prior convictions were from 2009, but observed that he violated the terms of his conditional release and was not discharged from his prior sentences until 2018. At that point, Kirkendoll promptly returned to criminal conduct in the stolen property scheme charged in this case. The court stressed the seriousness of Kirkendoll's instant offenses, including his choice to prey on less sophisticated stores in small communities. The court viewed Kirkendoll's attempts to intimidate a witness while on pre-trial release as the

-7-

"most aggravating factor," and emphasized that there must be consequences for attempting to manipulate the justice system.

Kirkendoll argues that the court gave too much weight to his prior convictions and insufficient weight to his potential for rehabilitation after education and training. Under the circumstances, however, we see no abuse of discretion. Kirkendoll's criminal history and offense conduct, including his commission of witness tampering while on pretrial release, adequately justified the sentence imposed.

\* \* \*

The judgment of the district court is affirmed.

_____