# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1408

_____

United States of America,       \*

                         \*

         Appellee,         \*

                         \*   Appeal from the United States

     v.                  \*   District Court for the

                         \*   District of Minnesota.

Aaron Jay Montgomery Lemon,   \*

                         \*

        Appellant.       \*

_____

Submitted:  November 20, 2009
Filed:  January 7, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Aaron Jay Montgomery Lemon conditionally pleaded guilty to production of child pornography, in violation of 18 U.S.C. § 2251(a), and was sentenced to 240 months' imprisonment. He appeals, arguing that the district court[1] erred in denying his motion to suppress evidence because the search warrant was based on stale information and thus not supported by probable cause. We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

I.

Law enforcement agents began investigating Lemon as a result of a separate investigation in San Francisco, California. On June 26, 2007, FBI agents in San Francisco executed a search warrant at the workplace of George Halldin, who was suspected of distributing child pornography online. A forensic examination of Halldin's computer revealed more than 9,000 images of child pornography and chat logs showing that Halldin had traded child pornography with another individual who used the screen name b2003, later identified as Lemon.

The chat logs revealed that the first interaction between Halldin and Lemon occurred on November 4, 2006. Lemon initiated a conversation by asking Halldin, "do u trade pics?" Halldin responded that he had pictures of preteens, and Lemon asked "how yng?" Halldin replied that there was "no limit that way," whereupon the two men began exchanging pictures. The images that Lemon sent included depictions of sexual acts with females appearing to be approximately five years of age. In a subsequent chat that same day, Lemon stated that "i've got lots of boys," and in a chat that took place the following month, Lemon asked Halldin, "u got more baby boy?" The FBI determined that Lemon chatted and exchanged child pornography with Halldin on four occasions between November 4, 2006, and December 5, 2006.

Based on the information from their investigation of Halldin, law enforcement officers subpoenaed internet service providers and determined that the individual who was using the b2003 screen name was located near Saint Paul, Minnesota. In April 2008, Sergeant William Haider of the Saint Paul Police Department assumed primary responsibility for the investigation. He traced the IP address to Lemon's apartment and confirmed that the b2003 screen name was still active, registering login activity on April 30, 2008.

In June 2008 Officer Haider sought a search warrant for Lemon's apartment. The warrant application included extensive discussion of Haider's expertise in investigating online distribution of child pornography. Haider acknowledged that the exchange between Halldin and b2003 had occurred eighteen months earlier, but he opined that a search of Lemon's residence would likely result in discovery of child pornography because b2003 had demonstrated behavior indicative of a preferential collector. Haider stated that "[i]t is probable that this type of child pornography collector will maintain child pornography images over an extended period of time as [he] compulsively and systematically save[s] the collected material." He further explained that such an individual rarely destroys his collection and would likely maintain child pornography on his computer hard drive for many years.

Haider received a search warrant, and a subsequent search revealed substantial evidence that Lemon had been engaged in production and distribution of child pornography.

II.

On an appeal of a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Pruneda, 518 F.3d 597, 603 (8th Cir. 2008).

Lemon contends that the search warrant was not supported by probable cause and that the evidence seized from his apartment should have been excluded. "Probable cause means a 'fair probability that contraband or evidence of a crime will be found in a particular place,' given the circumstances set forth in the affidavit." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). The date of the evidence in the affidavit is important to the probable cause determination because untimely information may be deemed stale. United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007). Lemon argues that

Officer Haider's affidavit was inadequate to establish probable cause because it alleged that Lemon had last traded child pornography in December 2006, eighteen months before the warrant issued.

"There is no bright-line test for determining when information in a warrant is stale." Pruneda, 518 F.3d at 604. Rather, we look to the circumstances of the case, including the nature of the crime involved. Id. "[T]he lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." Horn, 187 F.3d at 786.

We conclude that the information in the affidavit raised a fair probability that a search of Lemon's apartment would result in the discovery of child pornography. Possession of child pornography is a crime that is continuing in nature, and the evidence in the warrant application established that Lemon was unlikely to have destroyed the illegal material. Although the last known exchange of child pornography occurred in December 2006, Officer Haider cited evidence that the IP address and b2003 screen name were used in April 2008. These facts supported the inference that Lemon was still trading child pornography, particularly when coupled with Officer Haider's explanation that Lemon's behavior in November and December 2006 was indicative of a preferential collector who would maintain his collection for a long period of time.

Lemon argues that Officer Haider's assertion about the practices of pedophiles was mere conjecture, unsupported by evidence. This contention is belied, however, by both the warrant application and a large body of precedent. Officer Haider's affidavit provided significant detail about his qualifications and explained how his years of experience supported his conclusions. He also cited specific portions of the chat transcripts between Lemon and Halldin to demonstrate why he believed Lemon was a preferential collector of chid pornography. Many courts, including our own, have given substantial weight to testimony from qualified law enforcement agents

-4-

about the extent to which pedophiles retain child pornography. See, e.g., United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002); see also United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008); United States v. Irving, 452 F.3d 110, 125 (2d Cir. 2006); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997).

The eighteen-month interim between Lemon's last interaction with Halldin and the warrant application, though not insignificant, is hardly unprecedented. In United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), we upheld a warrant based in part on three-year-old information about the defendant's illegal possession of a firearm, because the suspected offense was continuing in nature and because expert testimony established that possessors of illegal firearms often keep their weapons for a long period of time. Similarly, in Morales-Aldahondo, the First Circuit held that a three-year lapse between the defendant's purchase of child pornography and the warrant application did not render the information stale. 524 F.3d at 119. The court noted the considerable evidence in the warrant application demonstrating that pedophiles do not quickly dispose of child pornography, observing that "[t]his is not a new revelation." Id.; cf. United States v. Prideaux-Wentz, 543 F.3d 954, 958-59 (7th Cir. 2008) (holding the warrant invalid because the date of the evidence was uncertain and could have been easily ascertained, but refusing to hold that evidence two to four years old is stale as a matter of law).

Lemon contends that United States v. Rugh, 968 F.2d 750 (8th Cir. 1992), requires us to hold that the evidence supporting the warrant was stale. We disagree. In Rugh, the defendant argued that the warrant was invalid because it was based on evidence of child molestation and possession of child pornography sixteen months before the warrant application. Although the district court found that the information was stale, we did not reach the issue of staleness because the government failed to challenge the district court's finding on appeal. Id. at 753. Instead, we affirmed the district court's conclusion that the search was covered by the good-faith exception to

the exclusionary rule, holding that the police could have reasonably believed that the defendant would still have child pornography in his home. Id. at 754. Rugh did not, as Lemon contends, establish that sixteen-month-old evidence of possession of child pornography is stale as a matter of law. Indeed, in the seventeen years since we decided Rugh, technological advances have increased the ease with which child pornography may be produced, maintained, or distributed—making it all the more likely that the contraband will be retained. See, e.g., United States v. Newsom, 402 F.3d 780, 783 (7th Cir. 2005) (observing that increased computer storage capacity may make it easier to retain child pornography for a significant period of time).

The evidence in the warrant application established that Lemon was interested in child pornography and that he had traded a significant amount of it on four occasions in late 2006. That information, augmented by Officer Haider's expert testimony and evidence that the screen name and IP address were still in use, was sufficient to create a fair probability that a search of Lemon's apartment would yield child pornography. Accordingly, the district court did not err in finding that the warrant was supported by probable cause.

The judgment is affirmed.

_____