# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3243

_____

United States of America,

        Appellee,

v.

Donald Gene Colbert,

        Appellant.

\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.

_____

Submitted: May 15, 2009
Filed: May 20, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Donald Gene Colbert conditionally pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 120 months' imprisonment. He appeals, arguing that the district court[1] erred in denying his motion to suppress evidence because the search warrant was not supported by probable cause. We affirm.

_____

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa. Thereafter, the case was assigned to the Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

On June 7, 2006, Detectives Kelly Myers and Mike Martin of the Davenport, Iowa, Police Department drove to Vandeveer Park to investigate a complaint of suspicious activity related to a young child. Upon arriving at the park, the detectives spoke with the child's uncle, who informed them that he had become concerned after observing a man interacting with the uncle's five-year-old niece, pushing her on a swing and talking about movies and videos the man had at his home. The detectives spoke with the child and two other witnesses and obtained a description of what was later determined to be Colbert's vehicle: a blue sedan with rear antennas resembling those of a police cruiser.

While Detectives Myers and Martin were still at the park, two patrol officers identified the vehicle and stopped Colbert. Colbert consented to a search of his vehicle and agreed to speak with Myers and Martin, who had arrived at the scene of the traffic stop. Inside Colbert's car the detectives found a police scanner, handcuffs, and a hat bearing the phrase "New York PD." Colbert told the officers that he had the handcuffs because he had been employed as a security guard four years earlier, and he admitted speaking to the girl about movies that he had at his apartment. Colbert was then taken to the police station for questioning.

Detective Myers meanwhile relayed information from the investigation to Detective Mark Dinneweth, who drafted a warrant application seeking permission to search Colbert's residence for books, photos, videos, and other electronic media depicting "minors engaged in a prohibited sexual act or in the simulation of a prohibited sexual act." In support of the warrant, Detective Dinneweth set forth the following summation of the investigation:

> On 06-07-06 officers responded to Vandeveer Park reference a suspicious subject.

During the course of the investigation it was determined Donald Colbert 512 E Locust St Apt #3 attempted to lure a five year old female to go to his apartment.

Colbert conducted a conversation with the girl for approximately forty minutes telling his apartment had movies and videos she would like to watch and other things for the girl to do.

Colbert's license plate IA 510NYF was provided by a witness and the vehicle was located by officers at Colbert's apartment.

Colbert gave consent to search his vehicle where officers observed a police scanner, binoculars, a police type hat, handcuffs, and the vehicle was equipped with CB antennas making it similar to a police vehicle.

An Iowa state district judge issued a search warrant for Colbert's apartment. The subsequent search resulted in the discovery of a number of children's movies, a computer, and numerous compact discs containing child pornography.

## II.

On an appeal of a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Lemon, 590 F.3d 612, 614 (8th Cir. 2010).

Colbert argues that the evidence seized from his apartment should have been excluded because the search warrant was not supported by probable cause. "Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, given the circumstances set forth in the affidavit." Id. (quoting United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999)). Probable cause is a fluid concept that focuses on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462

U.S. 213, 231 (1983) (internal quotation omitted). Determining whether probable cause exists requires a commonsense analysis of the facts available to the judicial officer who issued the warrant. See id. at 230, 238. We accord great deference to the judicial officer's initial, on-the-scene determination that probable cause has been established. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995).

Colbert first objects to the affidavit on the ground that it was conclusory in nature, failing to specify the source of the information that it contained. Colbert cites Illinois v. Gates, in which the Supreme Court explained that an affidavit that is "wholly conclusory" cannot establish probable cause. 462 U.S. at 239. As examples of affidavits in this category, the Court cited cases in which law enforcement officers simply stated that they believed or had a credible reason to believe that a search would yield evidence of criminal conduct. Id. The Court explained that such affidavits are insufficient because they provide the issuing magistrate with no independent basis for making the probable cause determination. Id. That is not the type of affidavit we have here.

Although the affidavit in this case may not be a model of detailed police work, it sets forth a number of specific facts and explains the investigation that took place. As Colbert points out, Detective Dinneweth did not word the affidavit in the first person. But his statements supported a fair inference that the police officers were the source of the information and that Dinneweth had firsthand knowledge of the investigation. Accordingly, we reject the argument that the affidavit was too conclusory to establish probable cause. See United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (holding as not fatally conclusory an affidavit that contained a statement that lent itself to a fair inference about the source of the information).

Colbert next contends that the facts set forth in the affidavit failed to establish probable cause to search his apartment for child pornography. He argues that the

affidavit did not establish a link between the evidence of enticement at the park and child pornography in his home.  Although this issue presents a closer question, we conclude that the affidavit established probable cause.

The affidavit included evidence that Colbert had attempted to lure a five-year-old girl to his apartment.  Colbert had a vehicle and clothing that made him look like a police officer, suggesting that he was attempting to appear as an authority figure.  The affidavit also related that Colbert possessed handcuffs and a pair of binoculars, which could reasonably give rise to the inference that he was surveilling the area, looking for opportune targets.  For no apparent reason, Colbert approached a five-year-old girl and spoke with her for approximately forty minutes.  Finally, the affidavit explained that Colbert attempted to convince the girl to accompany him to his apartment, where he claimed to have movies for her to watch and other things for her to do.  Taken together, those facts tend to paint a picture of an older male attempting to entice a young girl into sexual activity.

The district court concluded that this information established probable cause to search Colbert's apartment because "individuals sexually interested in children frequently utilize child pornography to reduce the inhibitions of their victims."  The court found that sexual depictions of minors could be logically related to the crime of child enticement, particularly under the facts of this case, in which Colbert had referred to movies and videos that he wanted the child to view at his apartment.  We agree.  Notwithstanding the affidavit's admitted lack of detail, the reviewing magistrate could have reasonably concluded that the search of Colbert's apartment was justified on this basis.

Other circuits have dealt with the question whether evidence of child molestation or pedophilic tendencies can support probable cause to search for child pornography.  In United States v. Hodson, the Sixth Circuit held that a search for child pornography was not supported by probable cause where the affidavit was based on

the defendant's online confession to an undercover officer that he had an attraction to children and had sexually molested a seven-year-old boy. 543 F.3d 286, 292 (6th Cir. 2008). Noting the lack of expert testimony in the affidavit about the relationship between molestation and child pornography, the court found the affidavit lacking because it "established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." Id. A divided panel of the Second Circuit reached a similar conclusion in United States v. Falso, invalidating a search warrant for child pornography that was based in part on evidence that the defendant had previously been arrested for sexually abusing a minor. 544 F.3d 110, 124 (2d Cir. 2008). The court stated that the fact that "the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough. They are separate offenses and . . . nothing in the affidavit draws a correlation between a person's propensity to commit both types of crimes." Id. at 123. But see id. at 132 (Livingston, J., concurring in part) ("Given the evidence . . . that child pornography is often used by pedophiles and child sexual abusers to stimulate themselves and to entice young victims, a person of reasonable caution would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause.") (internal citations and quotation omitted).

Hodson and Falso are factually inapposite. Neither case involved an application for a search warrant based on the defendant's contemporaneous attempt to entice a child. See Falso, 544 F.3d at 114 (stating that the evidence of defendant's prior sexual abuse was approximately eighteen years old); Hodson, 543 F.3d at 287 (noting that the warrant application was prepared almost three months after the internet chat that gave rise to the search). And neither case involved an application to search the exact location of the relevant sex crime. Here, in contrast, law enforcement officers drafted the search warrant as an immediate response to Colbert's attempted enticement. The officers executed the warrant on the same day that Colbert approached the child at the

park, and they focused their search on the very place where Colbert had expressed a desire to be alone with a five-year-old girl.

Moreover, to the extent that Hodson and Falso suggest that evidence of a defendant's tendency to sexually abuse or exploit children is irrelevant to the probable cause analysis, we respectfully disagree. Both courts based their conclusions on a categorical distinction between possession of child pornography and other types of sexual exploitation of children. But that distinction seems to be in tension both with common experience and a fluid, non-technical conception of probable cause. See Gates, 462 U.S. at 230-32. Evidence adduced to support probable cause must be "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id. at 232 (internal quotation omitted). The probable cause analysis is "not readily, or even usefully, reduced to a neat set of legal rules." Id.

There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation. Computers and internet connections have been characterized elsewhere as tools of the trade for those who sexually prey on children. See, e.g., United States v. Paton, 535 F.3d 829, 836 (8th Cir. 2008). For individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may very well be a logical precursor to physical interaction with a child: the relative ease with which child pornography may be obtained on the internet might make it a simpler and less detectable way of satisfying pedophilic desires. Cf. United States v. Byrd, 31 F.3d 1329, 1339 (5th Cir. 1994) ([C]ommon sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography."). Accordingly, we conclude that Colbert's attempt to entice a child was a factor that the judicial officer reasonably could have considered in determining whether Colbert likely possessed child pornography, all the more so in light of the evidence that Colbert heightened the allure

of his attempted inveiglement by telling the child that he had movies she would like to watch. That information established a direct link to Colbert's apartment and raised a fair question as to the nature of the materials to which he had referred. Although the return on the warrant does not list the titles of the children's movies found in his apartment, it would strain credulity to believe that Colbert was attempting to lure the child there to watch, say, "Mary Poppins" or "The Sound of Music," or to engage in basket weaving or a game of pickup sticks. The circumstances suggest that Colbert intended to victimize the child in some manner, and as the Supreme Court recognized nearly twenty years ago, "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." Osborne v. Ohio, 495 U.S. 103, 111 (1990). Thus, the state court judge could reasonably have concluded that the facts in the affidavit established a fair probability that child pornography would be found in Colbert's apartment.

There no doubt were ways in which the affidavit could have been strengthened by the inclusion of additional information. The law enforcement officers involved in obtaining the warrant testified at the suppression hearing about their knowledge of the link between child enticement and possession of child pornography. Dinneweth testified that, based upon his training and experience, "a subject trying to lure a 5 year old, they do possess pornographic material, specifically child pornography," and that he had forgotten to include that information in the affidavit. Our task is not to criticize the affidavit for what it did not contain but to determine, under a commonsense, non-technical analysis that gives due deference to the initial judgment of the issuing magistrate, whether what it did contain established probable cause to search for that which it described. Under that standard, we conclude that the affidavit was sufficient.

III.

Finally, even if we were to hold that the affidavit failed to establish probable cause, suppression of the evidence would not be appropriate because Colbert has not

shown that the officers acted unreasonably in carrying out the search. See United States v. Proell, 485 F.3d 427, 430-31 (8th Cir. 2007) (explaining the good faith exception to the exclusionary rule). As the foregoing discussion illustrates, the warrant application included some evidence from which reasonable officers might believe that a search for child pornography was justified. There is no indication that the state court judge failed to perform his proper judicial function or that the officers in this case acted other than in good faith when they carried out the search.

We conclude that the district court did not err in refusing to suppress evidence obtained from Colbert's apartment, and thus we affirm the judgment.

JOHN R. GIBSON, Circuit Judge, dissenting.

Because I disagree that the facts set forth in the affidavit establish probable cause to search Colbert's apartment for child pornography, I respectfully dissent. The majority relies upon a dangerous assumption in reaching its conclusion that the affidavit satisfies the requirements of the Fourth Amendment.

> It is an inferential fallacy of ancient standing to conclude that, because members of group A (those who collect child pornography) are likely to be members of group B (those attracted to children), then group B is entirely, or even largely composed of, members of group A. Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court. Perhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit. While the district court undoubtedly had the safety of the public in mind, an individual's Fourth Amendment right cannot be vitiated based on fallacious inferences drawn from facts not supported by the affidavit.

United States v. Falso, 544 F.3d 110, 123 (2d Cir. 2008) (internal quotation marks and citations omitted).

Here, Colbert was reported to have carried on a lengthy conversation with a young girl in a park. Based on this interaction, and evidence indicating that Colbert possessed handcuffs and other items consistent with the appearance of a police officer, Detective Myers and Sergeant Glandon decided to obtain a warrant to search Colbert's residence for the "children's movies" Colbert had allegedly discussed with the child. Detective Dinneweth then prepared a search warrant affidavit vaguely describing the events at the park and the evidence obtained during the search of Colbert's car. Although the affidavit likely provided probable cause to search for evidence of child enticement, the warrant sought only evidence related to the crime of child pornography.

As the majority notes, several courts have specifically rejected the idea that probable cause to believe that an individual engaged in the crime of child enticement, or even child molestation, is sufficient to establish probable cause to search the individual's home for evidence of child pornography. See Falso, 544 F.3d at 123; United States v. Hodson, 543 F.3d 286 (6th Cir. 2008) (holding that affidavit establishing crime of child molestation was insufficient to search for evidence of child pornography); see also United States v. Crespo-Rios, 623 F.Supp.2d 198 (D. Puerto Rico 2009) (same); People of the Virgin Islands v. John, 2009 WL 2043872 (S.Ct. V.I. July 1, 2009) (per curiam) (same). After dismissing contrary authority, the majority quotes language from two cases concerning a possible relationship between possession of child pornography and child exploitation, neither of which stand for the proposition that probable cause for one of the crimes is sufficient to allow a search for evidence of the other.

Recognizing this weakness, the panel goes on to hang its hat on Colbert's alleged statement that he "had movies and videos [the child] would like to watch." The

majority states that "it would strain credulity to believe that Colbert was attempting to lure the child there to watch, say 'Mary Poppins' or 'the Sound of Music' . . . ." The record, however, reveals otherwise. Detective Myers specifically testified that she and Sergeant Glandon decided to seek a search warrant in order to obtain the "children's movies" Colbert had discussed with the child:

> Q: And according to your report, Sergeant Glandon suggested getting a search warrant for the residence to look for the numerous children's movies Colbert claimed to have; isn't that correct?
>
> A: Correct
>
> Q: The children's movies?
>
> A: Correct

Detective Myers also explained the reason why Colbert was likely referencing children's movies:

> Well, it's our training that a subject that would discuss interesting things to do back at their home or that they have children's movies back there is a way to make that location desirable to the child to try to get trust to try to get the child to go with them.

Finally, Detective Myers replied "No" when the Court asked whether she was asserting that "if he, Mr. Colbert, was talking about movies with a 5 year old, that it's most likely pornographic movies? Is that what you're telling me?"

A court should not substitute its own assumptions for the experienced expertise of Detective Myers and others trained in the area of child crimes. At best, the affidavit established probable cause to believe that Colbert was involved in the crime of child enticement. Even if a relationship exists between child enticement and child pornography,"it was unreasonable for the magistrate judge . . . to infer such a nexus

without further evidence to support that inference." Hodson, 543 F.3d at 293. Accordingly, I would conclude that the warrant did not comply with the Fourth Amendment.

Finally, I disagree with the majority's alternative conclusion that the search can be upheld under the Leon good-faith exception. See United States v. Leon , 468 U.S. 897 (1984). For the same reasons articulated in Hodson, I conclude that the search warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

> [I]t was unreasonable for the officer executing the warrant in this case to believe that probable cause existed to search [defendant's] computers for child pornography based solely on a suspicion . . . [defendant] had engaged in child molestation. And, based on the record evidence, it appears that the only reason that the officer executing the search warrant . . . did not recognize the insufficiency of the warrant was that [the detective] was also the investigating officer who prepared the affidavit, obtained the warrant, and had specialized, subjective knowledge about these kinds of criminal offenses, this search, and this case. But, as the Supreme Court has made clear, such subjective knowledge is not sufficient to satisfy a finding of objective good faith.

543 F.3d at 293.

Accordingly, I would reverse the judgment of the district court.

_____