*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 26, 2021

v

DANIEL PATRICK RYAN,

Defendant-Appellant.

No. 354031
Ionia Circuit Court
LC No. 2019-017881-FH

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant, Daniel Patrick Ryan, pleaded no contest to one count of criminal sexual conduct second degree (CSC-II), MCL 750.520c(1)(a) (sexual contact with victim under 13 years of age), and one count of possession of child sexually abusive material, MCL 750.145c(4)(a), pursuant to a conditional plea agreement providing defendant with the right to appeal the trial court's prior adverse ruling on his motion to suppress evidence. The trial court sentenced defendant to 5 to 15 years' imprisonment for the CSC-II conviction, and one to four years' imprisonment for the sexually abusive material conviction, to be served concurrently. Defendant appeals as on leave granted,[1] arguing that the trial court erred by denying his motion to suppress and that the sentencing guidelines were improperly calculated. Because we conclude that the trial court properly denied the motion to suppress and that there was no error in the assessment of the sentencing offense variables (OV), we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises out of sexual criminal conduct perpetrated against the minor victim, AS. Defendant's children, AR and SR, were close friends with AS. According to an affidavit prepared by Detective Sergeant Phillip A. Hesche of the Ionia County Sheriff's Office for the purpose of

---

[1] *People v Ryan*, unpublished order of the Court of Appeals, entered August 4, 2020 (Docket No. 354031).

obtaining of search warrant for defendant's phone, on the evening of October 4, 2019, AS stayed the night at defendant's house for a sleepover with AR and SR. Defendant was the only adult present, as his wife was attending a church retreat. TS, mother of AS, told police officers that AS came home from the sleepover very upset and reported that when she awoke at 6:00 a.m. that morning, defendant was touching her breasts and vagina over her clothes. TS confronted defendant via text message. Defendant acknowledged the assault and apologized. TS called the police, and Deputy Austin Granger of the Ionia County Sheriff's Office responded to her residence. TS then called defendant in Deputy Granger's presence. During the phone call, which Deputy Granger recorded, defendant admitted to touching AS, explaining that he was sorry, that what he did was wrong, and that he broke everyone's trust.

Deputy Granger interviewed defendant at his home. Defendant acknowledged that he touched AS's breast, and that his hand may have touched her vagina, but he asserted that the touching was purely accidental. Defendant was later arrested, and law enforcement obtained a search warrant for the contents of his cellular phone. Following the search of the phone, he was charged with two counts of CSC-II, one count of using a computer to commit a crime, MCL 752.797(3)(d), and three counts of possessing child sexually abusive material.

Defendant filed a motion to suppress, asserting that the court should suppress his statements to law enforcement because he was subjected to a "custodial interrogation," and he was never advised of his *Miranda*[2] rights. The motion also alleged that the court should suppress the evidence seized pursuant to the search of his phone because the warrant was defective in that it lacked probable cause to support such an exhaustive search. Following a hearing, the trial court denied defendant's motion. Defendant entered into a conditional plea agreement in which he pleaded no contest to one count of CSC-II and one count of possession of child sexually abusive material. Under the plea agreement, the other counts were dismissed and defendant maintained the right to appeal the adverse ruling on his motion to suppress evidence. Defendant now appeals as on leave granted.

## II. ANALYSIS

### A. MOTION TO SUPPRESS STATEMENTS

Defendant first contends that the trial court erred when it denied his motion to suppress the statements he made to law enforcement because they were made during a custodial interrogation without being advised of or waiving his *Miranda* rights in violation of his Fifth Amendment right against self-incrimination. We disagree.

In considering a motion to suppress evidence, this Court reviews a trial court's factual findings for clear error. To the extent that the court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, the review is de novo. *People v Elliott*, 494 Mich 292, 300-301; 833 NW2d 284 (2013). "The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question

_____

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

of fact and law, which must be answered independently by the reviewing court after a de novo review of the record." *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). Clear error exists where the reviewing court is left with a "definite and firm conviction that a mistake has been made." *Id.*

In *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subject to "custodial interrogation." "Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody." *People v Anderson*, 209 Mich App 527, 532; 531 NW2d 780 (1995), citing *Illinois v Perkins*, 496 US 292, 296; 110 S Ct 2394; 110 L Ed 2d 243 (1990). However, "volunteered statements of any kind are not barred by the Fifth Amendment and are admissible." *Id.* "Thus, the procedural safeguards outlined in *Miranda* are required where the suspect is in custody and is subjected to interrogation." *Id.* An individual is in custody when their freedom of movement is restricted to the degree associated with a formal arrest. *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994). The key inquiry is whether a reasonable person would have felt that he or she was at liberty to terminate the interrogation and leave. *Yarborough v Alvarado*, 541 US 652, 663; 124 S Ct 2140; 158 L Ed 2d 938 (2004). To determine whether a suspect is in custody, a court must examine all "the circumstances surrounding the interrogation." *Stansbury*, 511 US at 322. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012) (citations omitted).

In this case, Deputy Granger arrived at defendant's home in the late afternoon of October 5, 2019. Defendant's driveway led to multiple houses just east of his home. Deputy Granger parked on defendant's front lawn so he would not obstruct traffic. Deputy Granger was dressed in his standard sheriff's department uniform and arrived in a fully marked patrol car. He had a visible sidearm and handcuffs on his belt. Kevin Beck, from child protective services, separately arrived at defendant's residence at the same time. Defendant came to the door, and Deputy Granger asked him to step outside to talk. Defendant agreed. After defendant walked out of his house, Deputy Granger told defendant that he was going to be "tied up" speaking with Deputy Granger "for a while." When Deputy Granger said "tied up," he meant, "occupied;" that "it wasn't going to be a quick conversation." Deputy Granger further testified at the suppression hearing:

> So, originally, he stepped out of the residence and sat down on the front step of the porch. I started talking to him, but there were a bunch of kids inside the residence, his children, and I asked him to step away from the house so the children couldn't hear what we were discussing.

Deputy Granger stated that defendant agreed to do that, and they walked toward Granger's patrol car, which was parked about 20 yards from the front porch. When defendant and Deputy Granger moved over to the patrol car, Beck went inside the residence to supervise the children

because there were no other adults present. The questioning lasted approximately an hour, and defendant was free to leave afterwards.

Upon review of the record, we conclude that, under the totality of the objective circumstances, defendant was not in custody for purposes of *Miranda* because his movement was not restricted to the degree associated with a formal arrest. See *Stansbury*, 511 US at 322. Defendant was questioned at his own home. He voluntarily stepped outside and moved away from his home toward Deputy Granger's police car when informed that he might not want his children to hear the conversation. During the entire questioning, defendant and Deputy Granger remained on defendant's own property. As the court found, defendant had the opportunity and ability to decline to speak with Deputy Granger and to go back into his home. See *Yarborough*, 541 US at 663. Defendant was not physically restrained at the time he made the statements. He was not told that he was required to answer questions. He was not threatened with arrest, nor was he arrested. See *Howes*, 565 US at 509. Deputy Granger did not specifically inform defendant that he was not under arrest, but defendant does not cite any caselaw or statute that provides that such a statement is necessary.

Defendant argues that when Deputy Granger told him that he would be "tied up" for a while," and then threatened to include defendant's wife in the questioning, a reasonable person would not feel free to leave. However, as observed by the trial court, defendant still could have ended the interview and walked back into his house.[3] See *Yarborough*, 541 US at 663 (stating that "the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest"). Considering the totality of the surrounding circumstances, defendant was not "in custody" such that *Miranda* warnings were required. See *id*. Accordingly, the trial court did not err by denying defendant's motion to suppress the statements made to Deputy Granger outside defendant's home. See *People v Mendez*, 225 Mich App 381, 387; 571 NW2d 528 (1997) (concluding that the defendant was not in custody because he picked the time for the interview in response to a written request, he drove himself to the police station, he was left alone and unrestrained in an interview room, he was allowed to leave after giving written answers to some questions, and the interview lasted approximately 1½ hours).

### B. MOTION TO SUPPRESS CELL PHONE EVIDENCE

Next, defendant contends that the trial court clearly erred when it denied his motion to suppress the evidence seized from the forensic extraction search of his cell phone. We disagree.

Defendant acknowledges that there was probable cause to search for text messages in his phone based on the evidence that he had texted back and forth with TS and had made admissions in those text messages, as well as admissions to the questioning officer. He further agrees with the trial court's finding that there was not probable cause to search for photographs and videos

---

[3] To the extent that defendant references the deputy's threat to involve defendant's wife, we note that while such involvement may cause defendant embarrassment, it is not indicative of custodial interrogation.

because there was no evidence to support a belief that defendant possessed sexually abusive material on his cell phone, based solely on his admission to sexual abuse. However, he contends that the trial court clearly erred when it relied on the testimony that the forensic extraction was the "gold standard" for obtaining digital evidence and upheld the warrant under the good-faith exception, despite the fact that the scope and intrusiveness of a forensic extraction was totally disproportionate to the probable cause showing. He argues that after finding the search warrant was overbroad, the court should have suppressed the evidence.

This Court reviews a trial court's findings of fact at a suppression hearing for clear error and reviews de novo its ultimate decision on a motion to suppress the evidence. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). Whether the exclusionary rule should be applied to a violation of the Fourth Amendment is a question of law reviewed de novo. *People v Custer*, 465 Mich 319, 326; 630 NW2d 870 (2001).

"It is well settled that both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (quotation marks and citation omitted). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant or without a warrant where the police officer's conduct does not fall within one of the specific exceptions to the warrant requirement." *Id*.

At the suppression hearing, the trial court heard extensive testimony from Detective Hesche, a certified computer and cell phone forensic analyst, concerning the difference between a forensic extraction, which was performed in this case, and a manual search. Detective Hesche explained that the cornerstone of a search is to make the least amount of changes and to destroy the least amount of evidence. The mere act of turning a cell phone on and off causes data to be destroyed. A manual search of a cell phone causes significant data to be lost, and there is no way to recover that deleted data. In a forensic extraction, the data remains, but at the same time, there is an entire extraction of everything on the phone. The forensic extraction does not permit limiting the search for particular data. All of the data on the phone comes out in a "big ball." Detective Hesche agreed that there was no search that could maintain a phone completely unaltered but, the forensic extraction was the least intrusive way to safely extract data without losing it.

1. PROBABLE CAUSE

In *People v Malone*, 287 Mich App 648, 663; 792 NW2d 7 (2010), overruled in part on other grounds by *People v Jackson*, 498 Mich 246, 265 n 9; 869 NW2d 253 (2015), this Court held:

> A search warrant may only be issued upon a showing of probable cause. Probable cause for issuance of a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the location to be searched. When reviewing a magistrate's decision to issue a search warrant, this Court must examine the search warrant and underlying affidavit in a common-sense and realistic manner. Under the totality of the circumstances, this Court must then determine whether a reasonably cautious person could have

concluded that there was a substantial basis for the magistrate's finding of probable cause. When a person of reasonable caution would conclude that contraband or evidence of criminal conduct will be found in the place to be searched, probable cause for a search exists. [Citations omitted.]

Probable cause must be based on facts presented to the issuing magistrate by oath or affirmations, such as by affidavit. *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). Probable cause to search must exist at the time the search warrant is issued. *Sgro v United States*, 287 US 206, 210; 53 S Ct 138; 77 L Ed 260 (1932).

"The Fourth Amendment requires that search warrants particularly describ[e] the place to be searched, and the persons or things to be seized. A search warrant thus must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *People v Hughes*, 506 Mich 512, 538; 958 NW2d 98 (2020) (quotation marks and citation omitted; alteration in original). In other words, "some context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *Id*. The Michigan Supreme Court has held "that as with any other search conducted pursuant to a warrant, a search of digital data from a cell phone must be reasonably directed at uncovering evidence of the criminal activity alleged in the warrant and that any search that is not so directed but is directed instead toward finding evidence of *other* and *unrelated* criminal activity is beyond the scope of the warrant." *Id*. at 557.

The affidavit for the search warrant described the property to be searched as:

Computer and cell phone forensic extraction, to search for phone call records, cell phone text messages, application messages, images, videos, web history, search history, and communications to or from [defendant].

1. Any and all equipment, records, electronic artifacts, or documents[4] pertaining to Criminal Sexual Conduct and Child Sexually Abusive Materials as stored in [defendant's] cell phone.

* * *

j. Literature and photographs depicting sexually explicit images of children, Child Sexually Abusive Materials, Child Erotica, and written fiction depicting sexual acts with children.

---

[4] As used in the affidavit, "document" was defined as "records or documents which were created, modified or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a computer."

k. Literature or photographs depicting the sexual assault of [AS], or of any fictional characters in her likeness to included drawings, written literature, or internet searches for similar sexual acts.

The affidavit stated that the underlying criminal offense for the search was criminal sexual conduct. Attached to the affidavit was the sworn statement of Detective Hesche, which included screen shots of text messages exchanged between defendant and TS, defendant's statements from the police interview outside his home, and disclosures made by AS during her interview with the child advocacy center. However, none of the provided statements concerned images or videos of the assault, or allegations involving child pornography.

In this case, considerable evidence was presented regarding the use of forensic extraction procedure for searching a cell phone, instead of a manual search. The court agreed that the goal of law enforcement was to exercise searches that were most likely to recover relevant information, in a manner that preserved the integrity of the investigation and did not destroy or delete information. The court opined that the best way to preserve evidence "in a manner that creates the least amount of changes," was to do a forensic extraction. The court accepted that the forensic extraction was the "gold standard" for searches of cell phones because it preserved the data and, thus, the integrity of the investigation. "This type of search is the best search, the one with the most integrity, but it, in essence, opens up the entire phone." The court found that, even though there was probable cause to search the phone with regard to the sexual assault texts, there was no information in the affidavit to support a fair probability that there would be images or videos of a criminal sexual nature, so there was not probable cause to search for images and videos. "I find there was not probable cause, as it relates to looking for these other things, specifically, images and videos." The court agreed that "what was requested here, in essence, was carte blanche through the phone and its contents." The court held that there was "no doubt" that the search was probably overbroad, "based on what was provided in the affidavit."

In *United States v Hodson*, 543 F3d 286, 286 (CA 6, 2008)[5], the court was called upon to decide whether a suspect's admission to having engaged in child molestation was sufficient, without more, to establish probable cause to search that suspect's home for child pornography. Following the defendant's admission of child molestation in an online chat room, a very expansive search warrant was executed at the defendant's residence and numerous pictures of child pornography were found. *Id*. at 289. The court noted that the search warrant described and directed "a search for evidence of child *pornography*, with nary a hint of child *molestation*." *Id*. at 288-289. According to the court, none of the evidence seized "would support any charge . . . of child molestation." *Id*. at 289.

The defendant in *Hodson* was indicted on charges of receiving and possessing child pornography. *Id*. He moved to suppress the evidence seized during the search, arguing that the search warrant was invalid. *Id*. The *Hodson* court held that the defendant's admission to having

---

[5] Although cases from other jurisdictions are not binding precedent, we may consider such cases to the extent that we find their reasoning persuasive. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

engaged in child molestation was not sufficient, without more, to establish probable cause to search that suspect's home for child pornography. *Id*. at 292. The court explained that the statement of probable cause contained "no information whatsoever with regard to [the defendant] engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." *Id.* at 289. Moreover, the court observed that there was no evidence in the affidavit or otherwise, such as expert testimony, "of any relational nexus between child molestation and child pornography." *Id*. Ultimately, the court determined that the detective had established probable cause to search for evidence of child molestation, but not to search for evidence of child pornography, "an entirely different crime." *Id*. See also *United States v Neuhard*, 770 F Appx 251, 253 (CA 6, 2019) (distinguishing the case from *Hodson* by explaining that the affidavit in dispute stated that the defendant showed the minor victim pornography and produced child pornography using his cell phone).[6]

Similar to *Hodson*, 543 F3d at 289, in this case, there was no evidence presented in the affidavit that defendant had engaged "in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." The affidavit did not contain any allegations that defendant recorded the assault, took photographs of AS, or showed AS any pornographic videos or images. Moreover, Detective Hesche did not indicate that, based on his experience, given defendant's acknowledgment that he committed criminal sexual conduct against a minor, he would expect to discover child sexually abusive materials on defendant's phone. See *id*. Therefore, we agree with defendant that the trial court did not err in concluding that the search was overbroad as to images and videos depicting child pornography.

## 2. GOOD-FAITH EXCEPTION

The determination that there was not sufficient probable cause to search defendant's phone for images and videos depicting child pornography is not the end of the analysis. Generally, "if a warrant is determined to be invalid because it lacked a probable-cause basis or was technically deficient in some other manner, any evidence seized pursuant to that warrant, or seized subsequently as a result of the initial illegal search, is inadmissible as substantive evidence in related criminal proceedings." *Hellstrom*, 264 Mich App at 193. However, the "good-faith" exception to the exclusionary rule "renders evidence seized pursuant to an invalid search warrant

---

[6] See also *United States v Falso*, 544 F3d 100, 123 (CA 2, 2008) (explaining "[t]hat the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough. They are separate offenses and. . . nothing in the affidavit draws a correlation between a person's propensity to commit both types of crimes"). However, the Eighth Circuit Court of Appeals disagreed with the holdings in *Hodson* and *Falso*, noting that "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *United States v Colbert*, 605 F3d 573, 578 (CA 8, 2010). According to that court, "[f]or individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may very well be a logical precursor to physical interaction with a child: the relative ease with which child pornography may be obtained on the internet might make it a simpler and less detectable way of satisfying pedophilic desires." *Id*.

admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid." *Id*. "The goal of the exclusionary rule. . . is to deter police misconduct. Thus, the goal of the exclusionary rule would not be furthered where police officers act in objectively reasonable good-faith reliance on a search warrant." *Id*. at 196 (quotation marks and citation omitted.)

In *People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018), this Court explained:

> Reliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

"Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Hellstrom*, 264 Mich App at 197.

In this case, there is no evidence that Detective Hesche did not reasonably believe that the search warrant was valid. There is no indication that the supporting affidavit contained false information, that the issuing magistrate wholly abandoned his or her judicial role, or that the affidavit was so lacking in indicia of probable cause that belief in its existence was entirely unreasonable. See *Czuprynski*, 325 Mich App at 472. Rather, the affidavit provided that defendant exchanged text messages with TS concerning AS's disclosures, and as a result, there was reason to believe that there was evidence of criminal sexual conduct on defendant's phone. Moreover, Detective Hesche testified that the best way to search the contents of a cell phone without disturbing any of the evidence is to perform a forensic extraction, which provides the phone's contents in one large group. Therefore, it is reasonable that some of the images and videos on defendant's phone would be viewed during a search for certain text messages. Accordingly, the trial court properly declined to suppress the evidence discovered on defendant's cell phone. See *Hellstrom*, 264 Mich App at 199 (concluding that officers that conducted the search of the defendant's home acted in good-faith reliance on the warrant because "although there were no allegations in the affidavit that [the] defendant had videotaped or taken pictures of the complainants, it did assert that the crimes happened in [the] defendant's residence [and] [g]iven the affiant's knowledge that pedophiles generally possess pornographic images for sexual gratification, it was entirely reasonable to believe that evidence of a crime would be found in

defendant's home, whether it be images taken of the complainants without their knowledge or possession of other material that would constitute child pornography").[7]

## C. SENTENCING

Finally, defendant contends that the minimum sentencing guidelines were improperly calculated. Specifically, he asserts that the trial court clearly erred by scoring OV 10 at 10 points, OV 12 at 5 points, and OV 13 at 25 points. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430; 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (citation omitted).

First, defendant objects to the assignment of 10 points for OV 10, arguing that it should be scored at 5 points because there was no exploitation of vulnerability except for the fact that the victim was sleeping at the time of the incident.

OV 10 concerns the exploitation of a vulnerable victim. According to MCL 777.40(1)(b), 10 points should be assessed to OV 10 if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." "Exploit" means "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" means "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). "Abuse of authority status" means "a victim was exploited out of fear or deference to an authority figure, including, but not limited to, a parent, physician, or teacher." MCL 777.40(3)(d). "Accordingly, to merit a score of 10 points for OV 10, a defendant must have manipulated a young victim for a selfish or unethical purpose and the victim's vulnerability must have been readily apparent." *People v Needham*, 299 Mich App 251, 255; 829 NW2d 329 (2013).

We conclude that the trial court did not clearly err by scoring OV 10 at 10 points. The preponderance of the evidence showed that defendant was acting as an authority figure at the time that the criminal sexual conduct occurred. He was the parent of AS's friend. She was staying in defendant's home overnight under his supervision, and he was the only adult present. The relationship that defendant had with the victim's family was correctly described as "a helper

---

[7] Lastly, although not discussed in the trial court proceedings, as noted by our Supreme Court in *Hughes*, 506 Mich at 550, because Detective Hesche was reasonably reviewing phone data for evidence of criminal sexual conduct, and happened to discover child abusive material, in which the incriminating character was immediately apparent, "the plain-view exception would likely apply and permit the state to use the evidence of criminal activity not alleged in the warrant at a subsequent criminal prosecution."

parental figure." In addition, the young age of the victim and the age of the defendant supported the assessment. The preponderance of the evidence showed that defendant "exploited" the victim's youth and abused his authority status for selfish and unethical purposes. Therefore, OV 10 was properly assessed at 10 points. See *id*.

Defendant next argues that the court incorrectly assessed OV 12 and OV 13. Defendant does not dispute that either OV 12 or OV 13 must be scored. Rather, he asserts that OV 12 should be assessed 25 points and OV 13 should be assessed no points.

Under, MCL 777.42(1)(d), OV 12, which concerns contemporaneous felonious criminal acts, should be assessed five points if "[o]ne contemporaneous felonious criminal act involving a crime against a person was committed." A contemporaneous felonious criminal act is defined as an act that "occurred within 24 hours of the sentencing offense," and that "has not and will not result in a separate conviction." MCL 777.42(2)(a). The "contemporaneous felonious act" in this case was the criminal sexual conduct charge that was dismissed pursuant to the plea agreement, which "occurred within 24 hours of the sentencing offense." For OV 13, involving a continuing pattern of criminal behavior, a sentencing court must assign 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c).

Defendant argues that OV 12 should have been scored at 25 points because he possessed the child sexually abusive material within 24 hours of the criminal sexual conduct. He contends that, even though it was discovered later, it was on his phone at the time. Defendant relies on *People v Loper*, 299 Mich App 451, 454-455; 830 NW2d 836 (2013), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358, 392-395; 870 NW2d 502 (2015), in which the defendant pleaded guilty to one count of possessing child sexually abusive material and one count of using a computer to commit a crime. The crime was reported in October 2008, when the defendant's wife gave the police eight computer disks. *Loper*, 299 Mich App at 462. It was later determined that the images were actually downloaded to the defendant's computer in May 2007, and there were at least 100 distinct images of child pornography contained on four disks. *Id*. at 454-455. The trial court listed October 23, 2008, the date the police received the first disk, as the offense date and "assessed 25 points for OV 12 on the basis that there were three or more contemporaneous acts of possession of child sexually abusive material." *Id*. at 462. The defendant argued that the "possession" of the disks began well over a year before the date of the offense and, therefore, "felonious acts" were not "contemporaneous" within the meaning of MCL 777.42(1)(a). *Id*. at 461-462. This Court concluded that "the facts presented to the trial court form the basis of a reasonable inference that defendant possessed the disks of child sexually abusive material beginning in 2007 or before, and that he possessed all four disks of child sexually abusive material on October 23, 2008." *Id*. at 462. Thus, it "was reasonable for the trial court to infer that defendant possessed the images within 24 hours of the offense date." *Id*. This Court stated that there was "evidence supporting the trial court's finding that there were three or more contemporaneous acts of possession of child sexually abusive material . . . and the trial court did not plainly err by assessing 25 points to OV 12." *Id*. at 463.

Defendant contends that, because of the number of child sexually abusive materials recovered, it is reasonable to assume that he possessed the material on the date of the criminal

sexual conduct offense, and therefore, 25 points should be assessed for OV 12 and OV 13 should not be scored at all since it involves the same conduct used to score OV 12.

We conclude that the trial court did not err by finding that the possession of child sexually abusive material was not contemporaneous with the criminal sexual conduct. Even if it would have been "reasonable" for the trial court to find that defendant possessed the child sexually abusive materials on the same date that he committed the criminal sexual conduct, the trial court was not required to do so. See *id*. (explaining that "even if we had concluded that OV 12 was improperly scored, the trial court had a basis to score the same 25 points under OV 13 because there was evidence to support that the "defendant had engaged in a pattern of felonious criminal activity involving a minimum of 3 possessions of child sexually abusive material"). Thus, the trial court did not clearly err by assessing OV 12 at 5 points and OV 13 at 25 points. Therefore, defendant is not entitled to resentencing.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark T. Boonstra