RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0101-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.                    ON REVIEW FROM COURT OF APPEALS
                              NO. 2021-CA-0925
                    KENTON CIRCUIT COURT NO. 19-CR-01762

KEVIN MASTER                                                APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING AND REMANDING</u>**

This appeal comes before the Court upon discretionary review from the Court of Appeals, which reversed the Kenton Circuit Court on the issue of whether Kevin Master's motion to suppress was incorrectly denied. Master entered into a conditional plea to ten years in prison based upon twenty counts of possession of matter portraying a sexual performance by a minor. But the search warrant leading to the discovery of the evidence predicating those twenty charges was based upon Master's purchase from China of a sex doll with the physical proportions of a child—a child sex doll. Master argued below, and to this Court, that there is an insufficient nexus between the purchase of a child sex doll and the possession of child pornography to justify a search warrant; therefore, in brief, there was no probable cause justifying the search warrant. The Court of Appeals agreed with Master and reversed the circuit

court's denial of the motion to suppress based on existence of probable cause but remanded to that court to perform a good-faith exception analysis.

For the following reasons we affirm the Court of Appeals.

## I.   Facts

These are the facts as represented on the Application and Affidavit in Support of Search Warrant filed by Detective Wilmer Gatson of the Kentucky State Police. On October 1, 2019, the United States Customs and Border Patrol intercepted a package originating from China. It was addressed to Kevin Master at his home in Erlanger. The package was stopped because of the Customs and Border Patrol's belief that there was a discrepancy between the listed contents on the shipping manifest and the size of the package. Upon being opened, "an anatomically correct child size doll manufactured for purposes of sexual gratification[,]" was discovered. Customs and Border Patrol contacted Det. Gatson and forwarded the package to him. Det. Gatson opened the package and "observed the doll is approximately 41" in height and appears pre-pubescent." The doll also has "orifices to replicate a human vagina and anus." Along with the doll was "a device that appears to be a heating element for the doll's genitals and another device intended to flush/clean the orifices after use." Det. Gatson attested his investigation confirmed Kevin Master lived at the listed address on the package.

On October 8, 2019, Det. Gatson swore out his application and affidavit to the district court in Kenton County. It states,

> Affiant [i.e., Gatson] has been employed with the Kentucky State
> Police for 25 years. Affiant is assigned to the ICAC [Internet Crimes

Against Children] Task Force and is specially trained in offenses involving the abuse and exploitation of children, including but not limited to child pornography and child sexual abuse. Based upon Affiant's training and experience, Affiant believes any person who orders a child sex doll from China has gone to great lengths to achieve sexual gratification for a sexual attraction to children. Affiant believes anyone who orders a child sex doll is also likely to be downloading, viewing, sharing, and/or manufacturing child pornography. Affiant knows child pornography to be readily available via the internet from the same types of illicit websites that sell child sex dolls. Affiant also knows computers, smart phones, and other electronic devises often contain the illicit images even after being "deleted" by the user. Affiant also knows people who look at child pornography often store collections of the matter for future use.

Based upon all of the above, Affiant requests that the search warrant be issued to search [Kevin Master's residence] in order to further Affiant's continuing investigation.

The search warrant was approved, and a search of Master's seized electronic devices revealed child pornography predicating the charges described above. On July 27, 2020, after an indictment had been obtained and the case brought within the Circuit Court, Master filed a motion to suppress.

In an Order dated October 22, 2020, the trial court detailed that Master argued insufficient probable cause for the warrant based on the lack of a nexus to criminal activity. In other words, the affidavit listed electronic devices to search for criminal activity related to child pornography, based solely on the alleged purchase by Master of a child-like sex doll—the possession of which was not criminalized by any Kentucky or federal statute at the time. The trial court denied the motion, employing the test that the Fourth Amendment and Section 10 of Kentucky's constitution are satisfied when, under the totality of circumstances, the four-corners of the affidavit demonstrate a substantial

3

basis to believe that probable cause exists the criminal activity alleged is being committed.

The trial court concluded,

> the affiant states that he is an experienced police officer who has trained in and worked on internet crimes involving child pornography. Based on his experience, Chinese web sites that sell the type of child sex doll purchased and received by Defendant also contain child pornography. He also attests that, in his experience, a person who goes through the lengths that Defendant went through to obtain such a prepubescent sex doll from China does so for sexual gratification for a sexual attraction to children and has likely downloaded, viewed, shared, and/or manufactured child pornography.

> This court finds that the affidavit established a substantial basis for a reasonable belief by the warrant-issuing judge that because Defendant, Kevin Master, ordered and received a prepubescent sex doll designed for sexual gratification from China, likely through a web site containing child pornography, there is a fair probability that he downloaded, viewed, shared and/or manufactured child pornography and evidence of same would likely be found in his home and/or on his electronic devices.

Master appealed as a matter of right and the Court of Appeals, in a thorough opinion, reversed. We quote it at length.

After noting the standard of review (discussed in section II), the Court of Appeals stated, "there were very few factual findings … because there were very few facts. While we must give deference to the warrant-issuing judge's decision, we are also limited to the four corners of the affidavit." It then recounted,

> [i]n the order on appeal, the circuit court walked through what few facts we have: a child sex doll was sent to the residence of Appellant KM; ordering and possessing a child sex doll is not illegal, but "[t]he facts contained in a warrant do not have to be illegal in and of themselves, rather they must establish the probability that contraband will be found." The circuit court then reiterated the Detective's assessment – not of Appellant KM specifically – but his general conclusions about the people and the

4

circumstances surrounding the purchase of a child sex doll. That was it. Then, the court determined

> the affidavit established a substantial basis for a reasonable belief by the warrant-issuing judge that because [Appellant KM] ordered and received a prepubescent sex doll designed for sexual gratification from China, likely through a web site containing child pornography, there is a fair probability that [Appellant KM] downloaded, viewed, shared and/or manufactured child pornography and evidence of same would likely be found in his home or and/or on his electronic devices.

And yet, Appellant KM did *not* receive the doll; law enforcement intercepted the doll and did not forward it to the residence of Appellant KM. The circuit court stated that based on the Detective's experience "Chinese web sites that sell the type of child sex doll purchased and received by [Appellant KM] also contain child pornography." However, the affidavit provides no proof the doll was purchased through a web site or that Appellant KM ordered the doll. The affidavit does not point to empirical data, cite to previous cases, or in *any way* support the presumption that web sites selling these dolls also sell child pornography. We are mindful that this deplorable area of the internet could be difficult to research, and examples could be hard to find, so we continue with our analysis.

The circuit court stated the Detective believes "a person who goes through the lengths that [the Appellant KM] went through to obtain such a prepubescent sex doll from China does so for the sexual gratification for a sexual attraction to children and has likely downloaded, viewed, shared, and/or manufactured child pornography." Again, the Detective showed no direct connection to Appellant KM beyond his address being on the mailing label. Neither the Detective, nor the circuit court, gave any hint as to what "lengths" the buyer went through to order the doll. There was no data, no research, and no evidence supporting the presumption that ordering such a doll was part and parcel to downloading, viewing, sharing, and manufacturing child pornography. There was no information in the affidavit supporting the contention that using a child sex doll for sexual gratification escalates this abhorrent attraction or leads to downloading, viewing, sharing, and manufacturing child pornography. Again, this may be because the subject matter was difficult to study; privacy considerations may

have limited examples, and statistical data may not be feasible in this area, but the Commonwealth did not address any such issues.

The affidavit relies – almost exclusively – on the Detective's training and experience, a knowledge base *we do value.* The Commonwealth noted that the Detective's 25 years of "seasoned experience and specialized expertise were given due consideration here." However, it is that breadth of experience that also gives us pause: wouldn't an officer with this level of experience know to investigate prior to applying for a search warrant for a private residence? Thankfully, we need not address that issue directly, because here, the circuit court failed the second aspect of our analysis: the circuit court *in*correctly determined that the warrant-issuing judge had a substantial basis for concluding that probable cause existed.

While the Court of Appeals stressed that a police officer's experience is an important factor, it was only one factor; and that "what are missing are facts specific to [Master]." Indeed, the only specific reference or investigation of Master up to that point had been merely to verify his address. Citing *United States v. Hodson*, the Court of Appeals held there must be "adequate supporting facts" demonstrating probable cause "for the particular search requested." 543 F.3d 286, 293-94 (6th Cir. 2008). Relying principally upon this case, the Court of Appeals determined there was a logical distinction between purchasing a child-like sex doll and possessing child pornography, and that there must be some supporting fact justifying a connection between the two—"the affidavit contained no basis to *support* the Detective's contention that people who purchase child sex dolls also possess child pornography. . . 'asserting' a connection exists—without any supporting evidence—is not enough."

To bring our discussion of the Court of Appeals' opinion to a close, it concluded that there must be a nexus between the illegal activity suspected (child pornography) and the place to be searched (Master's home). It found this lacking because "the activity that prompted the affidavit and search was separate from the crime being searched for in [Master]'s residence." In brief, "missing are *any facts* connecting [Master] to child pornography . . . there is no nexus, *no connecting facts,* between [Master]'s residence and child pornography."

The Commonwealth sought discretionary review which we granted. We now address the merits of the appeal.

I. **Standard of Review**

The Fourth Amendment requires only that a search warrant have substantial proof supporting a probable cause belief that a search would uncover criminal activity. *Illinois v. Gates*, 462 U.S. 213, 237 (1983). Kentucky has embraced this standard under Ky. Const. § 10. *Beemer v. Commonwealth*, 665 S.W.2d 912, 915 (Ky. 1984). There is no *de novo* review of a probable cause determination in a warrant context; instead, we pay "great deference" to the issuing-magistrate's determination. *Commonwealth v. Pride*, 302 S.W.3d 43, 48 (Ky. 2010) (citing *Gates, supra,* at 236). Thus, the test for a trial court is summarized: "whether under the 'totality of the circumstances' presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed." *Id.* at 49.

7

The appellate courts' review is two-pronged. First, a determination that "the facts found by the trial judge are supported by substantial evidence[;]" and second, "whether the trial judge correctly determined that the issuing judge did or did not have a 'substantial basis for ... concluding' that probable cause existed." *Id.* (citing *Gates, supra,* at 236). "We also review the four corners of the affidavit and not extrinsic evidence in analyzing the warrant-issuing judge's conclusion." *Id.*

## II.    Analysis

The Commonwealth's disagreement with the Court of Appeals' analysis is its contention that it fails to pay the proper deference to the issuing-judge's decision and fails to adhere to the probable cause standard. "While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates¸* 462 U.S. at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. These probabilities "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). In other words, "their substantive content [is determined] from the particular contexts in which the standards are being

8

assessed." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Thus, the definitive statement on probable cause is that it "exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Brinegar*, 338 U.S. at 175-76 (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)). To that end, the Supreme Court has been emphatic that "[p]rocrustean application" of probable cause is unwise, if not impossible, thus, "each case is to be decided on its own facts and circumstances[.]" *Ornelas*, 517 U.S. at 696 (quoting *Terry v. Ohio*, 392 U.S. 1, 29 (1968)).

The foregoing is a synopsis of the Commonwealth's legal argument, none of which we disparage. This is the law as the Supreme Court of the United States declares it under the Fourth Amendment, and we are obliged to follow. Factually, therefore, the Commonwealth argues that it is common sense that a person who purchases a child-like sex doll is likely to possess or manufacture child pornography. To quote the Commonwealth,

> The purchase of a child sized sex doll is so intertwined with child pornography that the discovery of the doll supports a common sense inference that there is a fair probability that child pornography will be found in the purchaser's home and on his electronic devices. As explained by Detective Gatson, child sized sex dolls and child pornography are closely linked because they are both means of furthering a sexual attraction to children and they are both obtained through the same channels.

The trouble with the Commonwealth's argument, and why we agree with the Court of Appeals, is that common sense is not a bottomless well from which the Commonwealth can draw any inference it desires; nor is it a free-floating

9

concept unmoored from the underlying facts within the four corners of the affidavit. It cannot be. *Brinegar*, 338 U.S. at 175-76. Common sense indeed is a wide-ranging and imprecise standard, but it *is* a standard—it is not *carte blanche*. There must be something "more than conclusory allegations" in the affidavit to pass constitutional muster. *Hensley v. Commonwealth*, 248 S.W.3d 572, 576 (Ky. App. 2007). "Mere affirmance of belief or suspicion is not enough." *Nathanson v. United States*, 290 U.S. 41, 47 (1933).

At the time that Master purchased this child sex doll it was not illegal. That is now changed. KRS 531.365 (possession of child sex doll a Class D felony). That has no bearing on this case because Master never possessed the doll in question; and it would violate *ex post facto* to attribute any weight to the statute. It must also be pointed out that a sexual attraction to children is not illegal—to act upon it, generally, is.[1] Pedophilia is indeed a "sick man's appetite [which] desires most that which would increase his evil." Shakespeare, *Coriolanus*, Act. I, Sc. I. The Commonwealth's logic, however, is that a person who purchases a child sex doll (not illegal at the time) to further his sexual attraction to children (not illegal in and of itself) is, by dent of common sense, also furthering that attraction through some other illegal means. While that may be true in some cases, it is a presumption we are not willing to indulge

---

[1] "[A] a person's inclinations and 'fantasies ... are his own and beyond the reach of government[.]'" *United States v. Jacobson*, 503 U.S. 540, 551-52 (1992) (quoting *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 67 (1973)).

without specific, underlying facts regarding the individual in question. As the Court of Appeals said,

> We too find it a logical step from such conduct – buying a child sex doll – to child pornography, but we cannot leap across a fact-less void . . . a warrant-issuing judge may make reasonable inferences based on common sense, but that judge cannot supply an *empirical* link between sexual deviance, or even sexual attraction, and pornography possession.

The lower court relied upon *United States v. Hodson,* 543 F.3d 286 (6th Cir. 2008) for that conclusion. In *Hodson,* the defendant was chatting online with an undercover officer whom he believed to be a twelve-year-old boy. *Id.* at 287. The defendant told the officer that he enjoyed looking at his two sons naked and had had sex with his seven-year-old nephew. *Id.* The Kentucky State Police were contacted, and they discovered the defendant did not have any known nephews and had only one known son. *Id.* Nonetheless, on the basis of the chat discussions alone, a warrant was sought to search for child pornography. The Sixth Circuit concluded there was no probable cause because the affidavit "established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." *Id.* at 292.

The Commonwealth has pointed out that *Hodson* is not above criticism—the "distinction [between child molestation and child pornography] seems to be in tension both with common experience and a fluid, non-technical conception of probable cause." *United States v. Colbert,* 605 F.3d 573, 578 (8th Cir. 2010). It is fair to criticize judicial opinions, but it must be done fairly. *Hodson* did not

11

say there was no connection between the two, even as a matter of simple logic; only that there were no facts linking the two in the affidavit. *Hodson*, 543 F.3d at 291-92. Simply because members of Group A (pedophiles) typically do *x* (collect child pornography) does not *ipso facto* mean that every individual of Group A is likely to be doing *x*. That is an abstract generalization and a conclusory allegation, which is contrary to the individualized requirements of a warrant—that this *specific* criminal conduct is likely to be occurring or has occurred at this *specific* location.

Nor is *Hodson* the only instructive decision available. For example, there is *United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015), whose panel included the now-sitting Justice Gorsuch. In *Edwards*, law enforcement had sought a warrant for Edwards' home and electronics on the basis of an investigation that linked Edwards' IP address to a profile on a website that had uploaded 715 images of child erotica and made numerous comments suggestive of a sexual attraction to prepubescent children. *Id.* at 957. Edwards challenged the warrant on the basis of a lack of probable cause. The warrant affidavit affirmed that

> 'most individuals who collect child pornography are sexually attracted to children' and those who possess 'child pornography' are 'highly likely' also to possess legal 'child erotica' and to participate in online forums 'catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community.'

*Id.* at 958. Crucial to the decision of *Edwards* is that law enforcement had affirmed in the affidavit that those who collect child pornography are likely to

12

also collect child erotica; and not, as the District Court had misconstrued, that those who collect child erotica are likely to collect child pornography. *Id.* at 959 n. 3. Thus, the court framed the issue as "whether the totality of the circumstances as presented to the magistrate judge in the search-warrant affidavit established probable cause that *child pornography* would be found at Mr. Edwards's home[,]" based on "evidence only that Mr. Edwards possessed legal *child erotica.*" *Id.* at 961.

In discussing the correlation between legal child erotica and illegal child pornography, the Tenth Circuit observed, "courts are reluctant to presume that persons are inclined to engage in certain illegal activity based on having engaged in a particular legal activity." *Id.* at 964. Then, contrasting the case with *United States v. Jacobson,* 504 U.S. 540 (1992), the court quoted: "proof that petitioner engaged in legal conduct and possessed certain generalized personal inclinations is not sufficient evidence to prove beyond a reasonable doubt that he would have been predisposed to commit the crime charged independent of the Government's coaxing." *Id.* (quoting *Jacobson, supra,* at 552 n.3). Although readily conceding *Jacobson* did not control because it wrote in the context of entrapment and involved differing standards of proof, the court nonetheless found *Jacobson* "instructive on the danger of assuming that legal conduct standing alone suggests the actor is also inclined to engage in criminal conduct." *Id.* Thus, the court concluded "a statement that collectors of child pornography—a group that there was no evidence includes Mr. Edwards—are highly likely to also possess child erotica did not provide 'a substantial basis

13

for concluding that probable cause existed' that child pornography would be found in Mr. Edwards's home." *Id.* at 965 (internal quotation omitted).

The court next considered the correlation between child pornography and other proclivities shared by persons who collect child pornography. *Id.* The court framed this issue as

> whether the fact that possessors of child pornography frequent online forums, arguably like the website where Mr. Edwards posted child erotica and comments suggesting a sexual attraction to a child, combined with his possession of child erotica, provided probable cause that child pornography would be found at Mr. Edwards's home.

*Id.* at 965-66. Looking to other jurisdictions, the court noted "[s]ome circuits have rejected the argument that evidence showing a defendant shares some proclivities with child-pornography collectors can establish probable cause to search for evidence of child pornography if no evidence is presented that the defendant is a collector of such materials." *Id.* at 966 (citing *United States v. Zimmerman*, 277 F.3d 426 (3rd Cir. 2002) and *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1991)). Thus, the court held "an assertion about the characteristics or proclivities of child pornography collectors does not establish a fair probability that Mr. Edwards would share those characteristics in the absence of evidence he is a collector or viewer of child pornography." *Id.* at 968.

Additionally, apropos of the fact that our decision today is not an outlier but firmly within an established body of law, the Tenth Circuit cited the case of *United States v. Falso*, 544 F.3d 110 (2nd Cir. 2008), a decision authored by the now-sitting Justice Sotomayor, which condemned the "'inferential fallacy of

14

ancient standing . . . that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely, or even largely composed of, members of group A.'" *Id.* This logical fallacy is closely akin to the fallacious reasoning advanced by the Commonwealth described above.[2]

Finally, the court in *Edwards* addressed the Eight Circuit's opinion in *Colbert*, which we have already noted. The court found it distinguishable on the fact that in *Colbert*, the search warrant for child pornography was upheld because the defendant had tried to lure a five-year-old girl to his home and specifically told her he had movies and videos he wanted to show her. *Id.* at 969. The *Edwards* court concluded no analogous circumstances were present in its case, and the same is true of Master's case.

The legal purchase of a child sex doll (though it must be remembered that Master never possessed it) is compellingly analogous to the possession of legal child erotica. If the possession of legal child erotica and numerous statements indicating a sexual interest in children does not suffice to establish

---

[2] *Falso* is also persuasive regarding Gatson's assertion within the affidavit that "Affiant knows child pornography to be readily available via the internet *from the same type of illicit websites* that sell child sex dolls." (emphasis added). The affidavit never identifies the specific website the sex doll was ordered from and contains no description whatsoever about the content of the website. Like in *Falso,* "the affidavit lacks any information about whether the [child pornography] images were prominently displayed or required an additional click of the mouse; whether the images were downloadable; or what other types of services and images were available on the site." *Falso,* 544 F.3d at 121. At best, the affidavit contains only a conclusory allegation that some websites facilitating the purchase of a child sex doll also are known to contain child pornography; but nothing about whether Master used one of those specific websites or, by virtue of using said website, that he also necessarily obtained or viewed child pornography.

probable cause that said person is also collecting child pornography, then neither can the mere alleged purchase of a lifeless, child-like sex doll. In the context of the First Amendment, the Supreme Court has observed that "[v]irtual child pornography is not 'intrinsically related' to the sexual abuse of children . . . the causal link is contingent and indirect." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250 (2002). Thus, the Commonwealth's argument that the purchase of a child sex doll and possession of child pornography are "so intertwined" collapses—"[t]he harm [to actual children] does not necessarily follow from the . . . [purchase of a child sex doll], but depends upon some unquantified potential for subsequent criminal acts." *Id.*

Therefore, following *Edwards*, *Hodson*, and other courts mentioned above, we agree that the affidavit here must have included evidence that established a probable cause belief that Master collected or viewed child pornography. "[T]he affidavit presented must contain adequate *supporting facts about the underlying circumstances* to show that probable cause exists for the issuance of the warrant." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (emphasis added). "Underlying circumstances" is the allegedly criminal conduct, or conduct supporting a probable cause belief of criminal conduct, by the suspect; the officer's training, experience, and beliefs is not an "underlying circumstance" in and of itself. And this leads to why Det. Gatson's allegations in the affidavit based on his law enforcement training and experience—over twenty-five years', including specialized training in sex crimes—is not enough.

16

Like the Court of Appeals, we agree this is valuable. But an officer's experience, and the common sense derived from that experience, is different in a warrant context as opposed to a warrantless context. *Ornelas*' statement that "that a police officer may draw inferences based on his own experience in deciding whether probable cause exists[,]" 517 U.S. at 700, was made in the warrantless context. Qualitatively different, however, is the warrant context where a neutral magistrate is available to provide for independent review of the officer's assertions. As the Supreme Court reiterated in *Gates*:

> [t]he essential protection of the warrant requirement of the Fourth Amendment, as stated in *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), is in "requiring that the usual inferences which reasonable men draw from evidence *be drawn by a neutral and detached magistrate instead of being judged by the officer* engaged in the often competitive enterprise of ferreting out crime." *Id.,* at 13–14, 68 S.Ct., at 369. Nothing in our opinion in any way lessens the authority of the magistrate *to draw such reasonable inferences* as he will *from the material supplied to him* by applicants for a warrant[.]

*Gates*, 462 U.S. at 240 (emphasis added). We look to a law enforcement officer's training and experience for common sense inferences supporting a probable cause determination in a warrantless context precisely because there is no magistrate in warrantless scenarios. The constitution, however, prefers warrants, which is why courts undertake *de novo* review in warrantless scenarios. *Ornelas*, 517 U.S. at 697-99. In a warrant scenario, however, *Gates* clearly directs us to examine the commonsense inferences of the warrant-issuing judge. And those commonsense inferences can only be drawn "from the material supplied to him" within the four corners of the affidavit. *Gates*, 462

17

U.S. at 240. The warrant-issuing judge may rely on the knowledge and experience of the officer in making its determination. *Id.* at 238. But, as made clear above, conclusory allegations and generalizations are not enough. Thus, the Court of Appeals correctly concluded that the affidavit in this case contained no connecting facts to Master or his residence, and child pornography; therefore, the warrant-issuing judge was not allowed to infer an empirical link where none existed in the affidavit merely by invoking common sense.

These connecting facts are what is referred to as the nexus requirement. Master's argument, as summarized by the Court of Appeals and is true of his own briefing before this Court, is that "an affidavit must minimally show a sufficient nexus between the illegal activity and the place to be searched[.]" *United States v. White*, 874 F.3d 490, 496-97 (6th Cir. 2017) (citation omitted). The Court of Appeals also summarized the Commonwealth's argument that it "attempts to create the nexus based solely on child pornography: the police sought child pornography, which is stored on electronic devices, devices which are located in the home." That amounts to nothing more than a truism. The Court of Appeals correctly concluded, "there is a nexus between child pornography and electronic equipment, but still missing are *any facts* connecting [Master] to child pornography." As such, we affirm the Court of Appeals that no probable cause existed within the four corners of the affidavit to justify issuing a search warrant for Master's electronics for child pornography.

Finally, both the Commonwealth and Master have asked us to address the question of applying the good faith exception to the warrant requirement or, in the alternative, remand to the trial court for an evidentiary hearing. Master argues that Det. Gatson was an investigating officer in a 2018 case—Phillips, 18-F-01698—in Kenton County and had obtained a search warrant for child pornography also based on the suspect purchasing a child sex doll. The Circuit Court later granted a motion to suppress by concluding there was no probable cause. Master presents an interesting question—having essentially already been told by the Kenton Circuit Court that purchasing a child sex doll does not, by itself, provide probable cause to search for child pornography in one case, can it be said Gatson was acting in good faith when he tried (and did) obtain a search warrant on the same basis subsequently in this case?

After review of the record, however, we conclude we do not have enough to make a fully informed decision. From the Phillips case, Master has attached as exhibits only a District Court and Circuit Court ruling, and what appear to be transcripts. But, without a record, we cannot verify those transcripts are accurate. And without a record, we cannot compare the affidavit in the Phillips case with the affidavit in this case—certainly a relevant factor. Finally, the parties themselves have not briefed this question to the degree we would expect given the implications of the argument. Master devotes only two-and-a-half pages to the issue in his brief, and the Commonwealth does likewise in its own. For these reasons, we decline to consider the good-faith exception and remand

to the Circuit Court for an evidentiary hearing. We do instruct that court, however, to consider the Phillips 18-F-1698 case.

### III.  Conclusion

It is a "basic principle that all people must stand on an equality before the bar of justice in every American court." *Chambers v. State of Florida*, 309 U.S. 227, 241 (1940). It is all-too-easy to look at men such as Master and justify an exception based on his putrid sexual desires. But "[i]llegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." *Commonwealth v. O'Harrah*, 262 S.W.2d 385, 389 (Ky. 1953) (quoting *Boyd v. United States*, 116 U.S. 616, 635 (1886)). Our chief virtue, however, tested in the fire[3] of hundreds of years' experience stretching back to the Tudors and the Star Chamber, is that every citizen regardless of his status—be it racial, social, economic, political, religious, or sexual—shall not be deprived of life or liberty but by due process of law under the constitution. We are not here to judge Master for the immorality of his sexual proclivities nor do those proclivities justify either greater relaxation or rigidness in the application of law. The Court of Appeals is affirmed, and this case is remanded to Kenton Circuit Court for an evidentiary hearing on whether the good faith exception applies.

All sitting. Lambert, Nickell and Thompson, JJ., concur. Lambert, J., also concurs with separate opinion in which Thompson, J., joins. VanMeter,

---

[3] "[T]he weakest of all weak things is a virtue which has not been tested in the fire." Mark Twain, *The Man that Corrupted Hadleyburg, in* The Complete Short Stories and Famous Essays of Mark Twain, 507, 532 (P.F. Collier and Sons 1928).

20

C.J., concurs in part and dissents in part with separate opinion in which Bisig and Keller, JJ., join.

LAMBERT, J., CONCURRING: I concur with the Majority's conclusion that the circuit court lacked a substantial basis to find probable cause existed to believe child pornography would be found in Master's home at the time the search warrant was issued. I also agree to remand and direct the trial court to determine whether the search warrant was nevertheless relied upon in good faith. *U.S. v. Leon*, 468 U.S. 897 (1984); *Crayton v. Commonwealth*, 846 S.W.2d 684 (Ky. 1992). I write separately to express my frustration regarding the truncated investigation which in turn led to the insufficient affidavit we are now called upon to review.

The search warrant affidavit in this case stated that a package sent from China containing a child sex doll "was being shipped to" Kevin Master at 546 Watson Road, Apartment #26 in Erlanger, Kentucky. But nowhere does the affidavit provide any proof, apart from the package being addressed to Master, that even suggests he was the individual who ordered the doll. There was no evidence, for example, that the doll was purchased with a credit or debit card in Master's name or that the IP address from which the doll was ordered was connected to Master in some way. The reality of the internet age we now live in renders the fact that an item is being shipped to a particular individual marginal proof, at best, that the person to whom the package is addressed actually ordered it: anyone can order anything and have it sent to someone else's home if they know the intended recipient's name and address.

21

Compounding the problematic lack of proof that Master ordered the doll is that the affidavit *entirely* based its conclusion that Master's home would contain child pornography—the crux of this case—on the fact that he had ordered the doll. The affidavit stated:

> Affiant believes anyone **who orders** a child sex doll from China has gone to great lengths to achieve sexual gratification for a sexual attraction to children. Affiant believes anyone **who orders** a child sex doll is also likely to be downloading, viewing, sharing, and/or manufacturing child pornography. Affiant knows child pornography to be readily available via the internet from the same types of illicit websites that sell child sex dolls. Affiant also knows computers, smart phones, and other electronic devices also contain the illicit images after being "deleted" by the user. Affiant also knows people who look at child pornography often store collections of the matter for future use.

(Emphasis added). And that was it. That was the entirety of the detective's basis to conclude that Master's home would contain child pornography. There was no other information that in any way connected Master's highly off-putting, albeit legal, conduct of allegedly ordering a child sex doll with the allegation that his residence would contain child pornography. There was no evidence he had been previously convicted of, or even accused of, possessing, distributing, soliciting, downloading, or purchasing child pornography. In that vein, the affidavit states that child pornography is available on "the same types" of websites that sell child sex dolls, but it never provides any indicia of proof that Master had accessed or had been active on any website that distributed child pornography.

Moreover, the affidavit provided extremely scant proof that Master even resided in the apartment on Watson Road; it simply stated: "Affiant's

22

investigation revealed Kevin Ryunjin Master does, in fact, live in the apartment to which the package is addressed. Affiant conducted surveillance on the residence and noticed a vehicle registered to Master parked outside the residence as recently as October 5, 2019." The fact that a vehicle registered to Master was parked outside the apartment complex on one occasion, alone, is not proof that he lived in the apartment at issue. And, because there was no other information in the affidavit connecting Master to the apartment, it is just as likely that the apartment was the home of a friend or family member that he happened to be visiting during the detective's surveillance. The detective did not attempt to contact the owner or manager of the apartment complex to determine who was renting apartment 26 at that time nor did he determine in whose name were the utility bills for the apartment. Further, the detective never attested that he actually saw Master driving the car that day or that he saw him enter or exit apartment 26 during his surveillance. He merely observed a car registered to Master parked outside a three-story, multi-unit apartment complex.

Finally, Master was never in possession of the package containing the doll because law enforcement opted not to deliver it to the apartment. A controlled delivery is an extremely common practice in investigations involving intercepted contraband being sent through the mail and it is a practice that is not unknown to law enforcement in this Commonwealth. *See Deemer v. Commonwealth*, 920 S.W.2d 48 (Ky. 1996) (unsuccessful controlled delivery of child pornography photographs); *Bennett v. Commonwealth*, 217 S.W.3d 871

23

(Ky. App. 2006) (successful controlled delivery of package containing methamphetamine); *Delacruz v. Commonwealth*, 324 S.W.3d 418 (Ky. App. 2010) (successful controlled delivery of package containing marijuana); *Yopp v. Commonwealth*, 562 S.W.3d 290 (Ky. App. 2018) (successful controlled delivery of packages containing marijuana).[4] While I do not believe, given the totality of the circumstances, that a controlled delivery alone of the doll to Master would have resulted in probable cause to believe his home contained child pornography, the absence of such a well-established investigatory procedure is at the very least notable. And the fact that Master never had possession of the doll lends even more credence to the Majority's conclusion that the affidavit failed to establish probable cause.

Although apartment 26 was in fact Master's residence and law enforcement did find child pornography therein, this Court does not have the luxury of viewing this issue through the affirming lens of hindsight. Rather, our duty is to determine whether the facts contained within the four corners of the affidavit alone provided the issuing court with a "substantial basis for

---

[4] Typically, in cases involving the controlled delivery of a package that has been intercepted by law enforcement, officers will obtain an "anticipatory warrant" prior to the controlled delivery. "An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" *U.S. v. Grubbs,* 547 U.S. 90, 94 (2006). Most often, the "triggering event" that allows the search warrant to be executed is the controlled delivery of the intercepted package. *Id.* This Court has never addressed the constitutional validity of anticipatory warrants, but the cases of *Luckl v. Commonwealth*, 2010-CA-001650-MR, 2012 WL 28693 (Ky. App. Jan. 6, 2012) and *Beene v. Commonwealth*, 2009-CA-000886-MR, 2010 WL 2428456 (Ky. App. June 18, 2010) indicate that they have been utilized in the past by Kentucky law enforcement. The use of anticipatory warrants has been upheld by the U.S. Supreme Court, *Grubbs*, 547 U.S. at 95, and a majority of our sister states. Norma Rotunno, Annotation, *Validity of Anticipatory Search Warrants—State Cases*, 67 A.L.R.5th 361 (1999).

concluding probable cause existed." *See, e.g., Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010).

The information provided in this affidavit was: (1) that a then-legal child sex doll "was being shipped to" Master without any proof that he purchased the doll and without any proof that he resided at the address to which the doll was being shipped; (2) that anyone who orders a child sex doll is likely to be "downloading, viewing, sharing, and/or manufacturing child pornography[,]" without any proof, again, that Master ordered the doll and without any proof that Master had ever been involved in any way with child pornography; (3) that child pornography is readily available on "the same types" of websites that sell child sex dolls without any proof that Master had been on the website that sold the doll or any proof that Master had ever accessed any of the similar websites that disseminate child pornography; and (4) that "people who look at child pornography often store collections of the matter for future use" without one iota of evidence that Master has ever looked at, possessed, downloaded, created, distributed, or solicited child pornography. Finally, the doll itself was never in Master's possession because it was never delivered.

There is an abundance of case law holding that the dearth of information provided in the affidavit at issue herein rendered it flatly insufficient to demonstrate probable cause that child pornography would be found in Master's residence. *Cf., e.g., U.S. v. Falso*, 544 F.3d 110 (2d Cir. 2008) (holding the affidavit for search warrant failed to establish probable cause that defendant's home would contain child pornography based on allegation that it "appeared"

25

the defendant gained access or attempted to gain access to a child pornography website); *U.S. v. Zimmerman*, 277 F.3d 426 (3rd Cir. 2002) (holding the affidavit for search warrant failed to establish probable cause that the defendant's home would contain child pornography based on allegations that defendant had sexually accosted several students attending the high school at which he was employed); *U.S. v. Hodson*, 543 F.3d 286 (6th Cir. 2008) (holding affidavit for search warrant failed to establish probable cause that defendant's home would contain child pornography based on statements made by defendant to undercover officer posing as a child that he had engaged in child molestation); *U.S. v. Perkins*, 850 F.3d 1109 (9th Cir. 2017) (holding affidavit for search warrant failed to establish probable cause that the defendant's home would contain child pornography based on the defendant's two twenty plus year old convictions for first degree incest and first degree child molestation and the possession of two nonpornographic images of children); *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) (holding affidavit for search warrant failed to establish probable cause that defendant's home would contain child pornography based on a three year old allegation of attempted child molestation and current allegations of the inappropriate touching of children); *U.S. v. Weber*, 923 F.2d 1338 (9th Cir. 1990) (holding affidavit for search warrant failed to establish probable cause that the defendant's home would contain child pornography based on the defendant ordering four photographs of possible child pornography from a government-generated advertisement); *U.S. v. Edwards*, 813 F.3d 953 (10th Cir. 2015) (holding search warrant

26

affidavit failed to establish probable cause that child pornography would be found at defendant's home based on his possession and dissemination of legal child erotica).

At bottom, there simply had to be more information in the affidavit to connect Master to the act of ordering the doll and to connect Master to the residence to which the doll was sent. Moreover, the affidavit needed to include information that connected Master and his residence to child pornography. Because the affidavit was insufficient to establish probable cause that child pornography would be found in Master's home, I am compelled to join the Majority.

Thompson, J., joins.

VANMETER, C.J, CONCURRING IN PART, DISSENTING IN PART: As the majority and concurring opinions have determined that the search warrant affidavit in this matter did not establish probable cause, I concur in so much of those opinions as remands this matter to the Kenton Circuit Court to determine whether the good faith exception applies to the search at issue. That noted, I respectfully dissent from the balance of those opinions. "The probable cause standard is . . . a 'practical, nontechnical conception.' 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)) (internal citation omitted). Further, "a

27

'finding of probable cause rests not on whether particular conduct is 'innocent' or 'guilty,' but on the 'degree of suspicion that attaches' to the Government's evidence.'" *United States v. Edwards*, 813 F.3d 953, 964-65 (10th Cir. 2015) (quoting *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009)).

Our own jurisprudence reflects the federal courts' preference for a nontechnical understanding of probable cause:

> Our review of a search warrant must give great deference to the warrant-issuing judge's findings of probable cause and should not be reversed unless arbitrarily exercised. Courts should review the sufficiency of an affidavit underlying a search warrant in a commonsense, rather than hypertechnical, manner. The traditional standard for reviewing an issuing judge's finding of probable cause has been that so long as the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing, the Fourth Amendment requires no more.

*Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005). In all,

> [t]he task of the [warrant] issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Commonwealth v. Pride*, 302 S.W.3d 43, 48 (Ky. 2010) (citing *Gates*, 462 U.S. at 238-39).

Upon appellate review,

> The proper test for appellate review of a suppression hearing ruling regarding a search pursuant to a warrant is to determine first if the facts found by the trial judge are supported by substantial evidence, RCr 9.78, and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a "substantial basis for ... conclud[ing]" that probable cause existed.

28

. . . In doing so, all reviewing courts must give great deference to the warrant-issuing judge's decision.

*Id.* (internal citations omitted).

The majority opinion extensively analyzes the Tenth Circuit Court of Appeals' opinion in *Edwards* to the effect that internet posting of child erotica, in that case legal pictures of a prepubescent girl, does not supply a sufficient nexus of probable cause to support a search warrant for child pornography in the possessor's residence. A close reading of *Edwards*, however, demonstrates that it is factually distinguishable. Edwards had posted 718 sexually suggestive, but not illegal, pictures of a certain prepubescent girl. 813 F.3d at 957-58. The court especially took note of the officer's supporting affidavit's assertion that "'most individuals who collect child pornography are sexually attracted to children' and those who possess 'child pornography' are 'highly likely' also to possess legal 'child erotica.'" *Id.* at 758. As a result, the court noted that the officer had essentially inverted the logical chain by not making the inverse conclusion that those who possess legal child erotica are highly likely to possess illegal child pornography. *Id.* at 965. This distinction is crucial, because the court also explicitly stated an earlier case, *United States v. Sondertrand*, 412 F.3d 1146 (10th Cir. 2005), "did not decide 'whether possession of child erotica alone could ever be enough to establish probable cause that an individual possesses child pornography. **And it is unnecessary**

**for us to do so here**." 813 F.3d at 963 (footnote omitted) (emphasis added).[5]

That, however, is the precise issue required for decision in the instant case.

*Colbert v. United States*, 605 F.3d 573 (8th Cir. 2010), is more directly on point. In *Colbert*, a suspicious man was observed in a park interacting with a five-year old girl. Upon being stopped by the police and speaking with them, Colbert admitted speaking to the girl about movies that he had in his apartment. In response, the police drafted a warrant application to search Colbert's apartment books, photos, videos and other electronic media depicting 'minors engaged in prohibited sexual acts[.]" *Id.* at 575. The following summation of the investigation was set out:

> On 06–07–06 officers responded to Vandeveer Park reference a suspicious subject.
>
> During the course of the investigation it was determined Donald Colbert 512 E Locust St Apt # 3 attempted to lure a five year old female to go to his apartment.
>
> Colbert conducted a conversation with the girl for approximately forty minutes telling his apartment had movies and videos she would like to watch and other things for the girl to do.

*Id.*

The court first rejected the claim that the affidavit was impermissibly conclusory, holding the "statements supported a fair inference that the police

---

[5] Similarly, *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), also cited by the majority, does not compel reversal of the Kenton Circuit Court's judgment. Like the *Edwards* affidavit, the *Falso* affidavit stated the "representation that 'the majority of individuals who collect child pornography are persons who have a sexual attraction to [children].;'" *Id.* at 122. Thus, the Second Circuit Court of Appeals held that "[p]erhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit." *Id.*

officers were the source of the information and that [the attesting detective] had firsthand knowledge of the investigation." *Id.* at 576.

The court next rejected Colbert's claim that the facts in the affidavit failed to establish probable cause to search his apartment for child pornography, specifically, a lack of a link between evidence of child enticement and child pornography in the home. The court agreed with the district court's analysis that

> "individuals sexually interested in children frequently utilize child pornography to reduce the inhibitions of their victims." The [district] court found that sexual depictions of minors could be logically related to the crime of child enticement, particularly under the facts of this case, in which Colbert had referred to movies and videos that he wanted the child to view at his apartment. We agree. Notwithstanding the affidavit's admitted lack of detail, the reviewing magistrate could have reasonably concluded that the search of Colbert's apartment was justified on this basis.[6]

*Id.*

But, much more importantly to this case, the court noted "'[C]ommon sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography." *Id.* at 578 (quoting *United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994)); *see also State v. Ball*, 164 N.H. 204, 209, 53 A.3d 603, 608 (2012) (affirming probable cause determination, in part, on officer's assertion, based on training and experience, "that those who 'have demonstrated an interest or preference in sexual activity with children . . . are likely to keep

---

[6] This "reasonable conclusion" was made without the affidavit including any reference to what movies may have been at Colbert's apartment: Disney princess, Peppa Pig, Bluey, or child porn.

31

secreted, but readily at hand, sexually explicit visual images depicting children,' which they often 'carry . . . upon their person in the form of USB drives or other media storage devices,' and that persons receiving such images will copy them onto their computers' hard drives[]").

And, to paraphrase the Eighth Circuit in its distinguishing *United States v. Hodson* , 543 F.3d 286 (6th Cir. 2008), *Falso*, authored by then Judge Sotomayor, and *Edwards*, in which then Judge Gorsuch participated, to the extent those courts found affidavits to be deficient, I respectfully disagree. We can dance around whether possession of a child sex doll at the time of the Master's arrest was legal and what that might imply, but beyond any doubt, the ordering and possession of a child sex doll indicates a sexual interest in children and, in turn, common sense indicates "a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography." *Colbert,* 605 F.3d at 578.

Unlike the affidavits in *Edwards* and *Falso*, Detective Gatson's affidavit linked the purchase of a child-sized sex doll with a sexual attraction to children and thence to possession of child pornography, based on his extensive experience with child sex cases. Detective Gatson was a 25-year veteran of the Kentucky State Police. As part of the Internet Crimes Against Children task force, he received special training in offenses against children, such as the possession of child pornography. Det. Gatson was uniquely positioned to assess the facts then in his possession and come to a commonsense conclusion that Master likely possessed child pornography on his electronic devices. He

32

knew that a sex doll in the form of a child had been ordered to an address where officers established Master was living. Through his training and experience, Det. Gatson knew that individuals using the internet to search for and order child sex dolls were likely to also use those same resources to find material to heighten the experience of using the doll, i.e. child pornography. He also knew that individuals who sought child pornography were likely to store their collections on their electronic devices. Det. Gatson's training and experience connected these elements in such a way that a "fair probability" existed illicit materials would be found in Master's residence. *See United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018) (noting that "child pornography is typically possessed in the secrecy of the home[]"); *Couch v. Commonwealth*, 686 S.W.3d 172, 181 (Ky. 2024) (quoting *Tagg* and rejecting argument that affidavit failed to establish nexus between criminal activity and suspect's apartment); *Moore*, 159 S.W.3d at 329 ("[T]he test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. Probable cause does not require certainty that a crime has been committed or that evidence will be present in the place to be searched." (Internal citation omitted)).

The importance of Det. Gatson's training and experience should not be understated. The U.S. Supreme Court has opined that reviewing courts "should give due weight to a trial court's finding that the officer was credible and the inference was reasonable." *Ornelas v. United States*, 517 U.S. 690, 700 (1996). Inferences that appear to be unreasonable leaps of logic for us may be

33

imminently reasonable to an experienced officer. *Id.* ("To a layman the sort of loose panel below the back seat armrest in the automobile involved in this case may suggest only wear and tear, but to Officer Luedke, who had searched roughly 2,000 cars for narcotics, it suggested that drugs may be secreted inside the panel[]"). Although that case was decided outside the search warrant context, I can discern no compelling reason that its logic is undermined simply because search warrants are reviewed by a neutral magistrate prior to issuance. We have followed *Ornelas*'s directive in the warrant context in the past. *Hensley v. Commonwealth*, 248 S.W.3d 572, 574 (Ky. 2007) ("Further, we are bound to give 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'") (quoting *Ornelas*, 517 U.S. at 699)). The federal courts also do not make such a distinction. *See United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) (Assessing the validity of a search warrant, the court granted "due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers." (quoting *Ornelas*, 215 U.S. at 699)); *United States v. Khounsavanh*, 113 F.3d 279, 282 (1st Cir. 1997) (Following *Ornelas* in assessing probable cause undergirding a search warrant and "giv[ing] due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers[]"). In assessing either a search warrant or a warrantless search, the reviewing court must determine whether probable cause exists, the only difference being whether the court is assenting to future action or approving of past action. And, as already noted, our jurisprudence mandates

34

"great deference" to the issuing judge's decision, which included, implicitly, a "finding that the officer was credible and the inference was reasonable."

The issuing judge's decision to grant the search warrant was not arbitrarily exercised. The application and affidavit presented a fair probability that evidence would be present in Master's residence based upon the fact of his ordering a child sex doll to his residence and Det. Gatson's imminently reasonable chain of reasoning developed through his many years with the state police and the child-sex-crime-specific training program he has been through. To obtain the warrant, Det. Gatson was not obliged to establish as a fact every link in the chain connecting the pornography to Master; Det. Gatson needed only to establish a factual basis for his reasonable conclusions as based on his training and experience. The issuing judge found the affidavit to present a fair probability that child pornography would be present in the home, and I do as well. I would reverse the Court of Appeals and affirm the trial court's denial of Master's motion to suppress.

Bisig and Keller, JJ., join.

COUNSEL FOR APPELLANT:

Russell M. Coleman
Attorney General of Kentucky

Shawn D. Chapman
Deputy Solicitor General

COUNSEL FOR APPELLEE:

Steven J. Buck
Assistant Public Advocate
Department of Public Advocacy